Gnerre *v.* Massachusetts Commission Against Discrimination.

ANTONIO GNERRE *vs*. MASSACHUSETTS COMMISSION AGAINST
DISCRIMINATION & another.[1]

Suffolk. February 2, 1988. — June 8, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Landlord and Tenant*, Discrimination, Sexual harassment. *Anti-Discrimination Law*, Sex. *Law Administrative Law*, Substantial evidence.

A landlord's sexual harassment of a tenant that creates a hostile environment constitutes discrimination in housing in violation of G. L. c. 151B, § 4 (6). [505-507]

A tenant plaintiff states a prima facie case of sexual harassment in violation of G.L. c. 151B, § 4 (6), by demonstrating that a defendant landlord subjected him or her to unsolicited harassment of a sexual nature and that the harassment was of such a nature as to make the tenancy significantly less desirable to a reasonable person in the plaintiff's position. [507]

Whether a landlord's sexual harassment renders a tenancy less desirable so as to violate G. L. c. 151B, § 4 (6), is not a determination subject to a requirement of a minimum number of incidents; the issue is to be decided on a case by case basis depending on the nature of the landlord's conduct. [507-509]

Substantial evidence supported the determination of the Massachusetts Commission Against Discrimination that a landlord violated G. L. c. 151B, § 4 (6), by subjecting a tenant to unsolicited sexual harassment which interfered with the tenant's ability to use and enjoy the leased premises. [509-510]

CIVIL ACTION commenced in the Superior Court Department on June 28, 1985.

The case was heard by *Thomas R. Morse, Jr.*, J., on a master's report.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph Wine* for the plaintiff.

*Sharyn E. Dreyer* for Massachusetts Commission Against Discrimination.

---

[1] Barbara Silverstein.

*Lynn A. Girton* for Barbara Silverstein.

ABRAMS, J.   Antonio Gnerre appeals from a Superior Court judgment affirming a decision by the Massachusetts Commission Against Discrimination that Gnerre, a landlord, had discriminated against his tenant, Barbara Silverstein, on the basis of sex, in violation of G. L. c. 151B, § 4 (6) (1986 ed.). The commission, affirming the decision of the hearing commissioner, determined that Gnerre was liable because he sexually harassed Silverstein during the course of her tenancy. Gnerre argues that the commission's decision was based on an erroneous standard of law and was not supported by substantial evidence. We do not agree. We affirm.

We summarize the facts found by the hearing commissioner. Barbara Silverstein, a single woman, lived with her young son in an apartment located in Revere. At the time of the hearing in 1984, Silverstein had lived in the apartment for seven years. Silverstein's building contained four apartment units. Antonio Gnerre owned the apartment building in which Silverstein resided. Gnerre also owned the apartment building located across the street from Silverstein's building. During the course of her tenancy, Silverstein saw Gnerre when he visited his properties to collect rent, to make repairs, or to show apartments to prospective tenants.

Silverstein alleged several acts of sexual harassment. In August, 1981, Silverstein returned home in a car driven by her brother-in-law. As she got out of the car in front of her apartment building, Gnerre came out of an alley located next to his property across the street from Silverstein's building. Gnerre called out to Silverstein: "How many times did you get laid this week?" In December, 1981, Gnerre came to Silverstein's door to collect the rent. Silverstein told Gnerre that she would have the money for him later that day. Gnerre pointed to the fly of his trousers and said, "I got a big sausage, you want?" Silverstein responded that she did not understand what he meant. Gnerre repeated the question, smiled, and left. In May, 1983, Gnerre entered Silverstein's apartment to make repairs subsequent to an inspection by the Revere board of health. Gnerre replastered a portion of the wall in Silverstein's bedroom. Silverstein asked Gnerre if he intended to leave the

repaired wall bare without painting or wallpapering it, to which Gnerre responded, "Well, you can get a picture of a naked man there right over your bed — you can get a nice picture." In September, 1983, Silverstein was leaving the apartment building in the company of her then six year old son. Gnerre yelled to Silverstein from the alley next to his property across the street, "Nice pair of tits, honey." Silverstein's son asked her what Gnerre's comment meant. Silverstein began to cry.

Silverstein's mother, Ruth, witnessed the incident of September, 1983, and corroborated her daughter's account of the event. Ruth Silverstein also said that her daughter telephoned her shortly after the incident of December, 1981, and, crying, related to her what Gnerre had said. Kim Bergen, a former tenant in Silverstein's building, said that Silverstein came to her apartment sometime in the fall of 1983 and related to her the incident of September, 1983. Bergen said that Silverstein cried as she related this incident.

The hearing commissioner found that Silverstein had suffered severe and prolonged emotional distress as a result of Gnerre's sexual harassment. Silverstein stated that she felt "terribly embarrassed," "degraded," "cheap," and "low" after Gnerre's comments to her. Silverstein experienced physical symptoms of distress after each incident of sexual harassment, and she cried after the incidents of harassment and when she recounted the events to other people. Silverstein was particularly upset that Gnerre's comment was heard by her son.

The hearing commissioner also found that, as a result of the repeated incidents of harassment, Silverstein became "terrified" of Gnerre because she did not know what he was capable of doing to her. Silverstein changed her behavior patterns in order to avoid meeting Gnerre and to prevent his making further comments to her. She constantly feared situations in which she might encounter Gnerre. Silverstein stated that her meetings with Gnerre caused her extreme anxiety because she worried about what Gnerre might say to her. The commissioner also found that, as a result of Gnerre's sexual harassment, Silverstein's emotional distress extended to situations not involving Gnerre. Silverstein said that she thought about Gnerre's com-

ments when she was with other men, and she feared that other people thought about her the way Gnerre did. The commissioner found that Silverstein's emotional distress, suffered as a result of Gnerre's sexual harassment, continued to the time of the hearing and was evidenced by Silverstein's obvious distress while presenting her testimony.

The commissioner ruled that a landlord's sexual harassment of a tenant constitutes sex discrimination in the terms, conditions, or privileges of housing in violation of G. L. c. 151B, § 4 (6), even if no specific adverse housing action is threatened by the landlord. The commissioner ruled that Silverstein had proven actionable sex discrimination under G. L. c. 151B, § 4 (6), by demonstrating that (1) she is a member of a protected class; (2) she was subject to unsolicited harassment of a sexual nature; and (3) the harassment was of such a nature as to make the tenancy significantly less desirable than if the harassment had not occurred. The commissioner concluded that, under either a subjective or an objective standard, Gnerre's repeated harassment reduced the value of Silverstein's tenancy and, thus, adversely affected the terms, conditions, and privileges of her housing in violation of G. L. c. 151B, § 4 (6).

On the basis of her findings of fact and conclusions of law, the commissioner ordered Gnerre to cease and desist from engaging in any form of sexual harassment or from otherwise discriminating on the basis of sex in violation of G. L. c. 151B, § 4. The commissioner further ordered Gnerre to pay Silverstein the sum of one thousand dollars plus interest at a rate of twelve per cent per annum from the date the complaint was filed.

The full commission affirmed the decision of the hearing commissioner. Gnerre sought judicial review of the commission's decision in the Superior Court. The court affirmed the commission. Gnerre appealed. We transferred the case to this court on our own motion.

1. *Applicability of G. L. c. 151B, § 4 (6).* Gnerre contends that the court below erroneously affirmed the decision of the commission on the ground that "[t]he law requires that sexual harassment, to be actionable, attain to a certain level of pervasiveness and persistence. As a matter of law, [Gnerre's] isolated

remarks, no matter how obnoxious, over two years do not begin to attain that level." We thus must determine whether sexual harassment constitutes a violation of G. L. c. 151B, § 4 (6), and the appropriate legal standard for determining whether such a violation has occurred.

We have not previously determined whether a landlord's sexual harassment of a tenant constitutes discrimination in housing in violation of G. L. c. 151B, § 4 (6), and on what basis a landlord may be held liable. General Laws c. 151B, § 4 (6), provides in part: "It shall be an unlawful practice: . . . 6. For the owner, lessee, sublessee, licensed real estate broker, assignee or managing agent of publicly assisted or multiple dwelling or contiguously located housing accommodations or other person having the right.of ownership or possession or right to rent or lease, or sell or negotiate for the sale of such accommodations, or any agent or employee of such a person or any organization of unit owners in a condominium or housing cooperative: - . . . (b) to discriminate against any person because of his race, religious creed, color, national origin, sex, age, ancestry or marital status . . . in the terms, conditions or privileges of such accommodations . . . ." We note also that G. L. c. 151B, § 9, provides in part: "The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof . . . ."

In *College-Town, Division of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156 (1987), we construed analogous language in G. L. c. 151B, § 4 (1), as prohibiting sexual harassment that creates a hostile environment in the workplace. We concluded that G. L. c. 151B, § 4 (1), prohibited discrimination not only in the hiring, firing and compensation of employees, but also in the "terms, conditions or privileges of employment" and that "within the broad sweep of that language falls conduct which creates a sexually harassing work environment." *Id.* at 162. Similarly, we conclude that sexual harassment need not affect a tangible condition of tenancy such as eviction, refusal to rent, or rental cost to be a violation of G. L. c. 151B, § 4 (6). General Laws c. 151B, § 4 (6), prohibits discrimination on the basis of sex in the

"terms, conditions or privileges" of housing and we believe that sexual harassment that creates a hostile environment violates this prohibition.

A plaintiff states a prima facie case of sexual harassment in violation of G. L. c. 151B, § 4 (6), by demonstrating (1) that the landlord subjected him or her[2] to unsolicited harassment of a sexual nature, and (2) that the harassment was of such a nature that it would make the tenancy significantly less desirable to a reasonable person in the plaintiff's position.

In determining whether the landlord's conduct was of such a nature that it made the plaintiff's tenancy significantly less desirable, we view the evidence of harassment from the view of a reasonable person in the plaintiff's position.[3] See Note, Sexual Harassment Claims of Abusive Work Environment Under Title VII, 97 Harv. L. Rev. 1449, 1459 (1984). We examine whether, from the point of view of a reasonable person in the tenant's position, the landlord's conduct caused a significant decline in the desirability of the tenancy.

The question is whether the landlord's actions have rendered a tenancy less desirable. That issue should may be decided on a case-by-case basis, and we specifically reject Gnerre's suggestion that we impose, as a matter of law, a quantitative requirement on the incidents of harassment that will constitute actionable sex discrimination. In *College-Town*, this court did not impose such a requirement in the context of sexual harassment in the workplace. We stated that harassment is actionable if it "[i]s sufficiently pervasive to alter the conditions of [the

---

[2] In her findings of fact and conclusions of law, the hearing commissioner determined that, in order to state a prima facie case of sexual harassment in violation of G. L. c. 151B, § 4 (6), a plaintiff must be a member of a protected class. The commission affirmed that ruling. We do not agree. The statute does not require that a plaintiff be a member of a protected class. The statute only requires that the unsolicited harassment be of a sexual nature.

[3] We need not decide whether an unreasonably sensitive plaintiff may recover under under G. L. c. 151B, § 4 (6), if he or she notifies the defendant that certain conduct is offensive, and the defendant persists in the offensive conduct even after notice by the plaintiff. Note, Sexual Harassment Claims of Abusive Work Environment Under Title VII, 97 Harv. L. Rev. 1449, 1459 (1984).

victim's] employment. . . ." *College-Town, supra* at 162. Similarly, we decline to impose a quantitative requirement on the incidents of harassment in the context of housing.[4]

We reject imposing any numerosity requirement for two reasons. First, a legal standard that requires a plaintiff to prove a minimum number of incidents of harassment does not recognize the variety of conduct that may constitute sexual harassment. Further, it does not recognize that different conduct, depending on its nature, can more or less quickly render a tenancy less desirable. Very threatening behavior or sexual harassment involving physical contact, for instance, might render a tenancy less desirable after even one incident, whereas offensive sexual speech, depending on its nature, might not make a tenancy less desirable to a reasonable person in the plaintiff's position if the comments are made infrequently. However, the more offensive the comments the fewer incidents of harassment may be required to demonstrate the objective reasonableness of the claim that the value of the tenancy was diminished for a plaintiff. A numerosity requirement would not allow the commission or a court to balance the severe or the threatening nature of the conduct against its frequency of occurrence in determining whether the plaintiff's tenancy was rendered less desirable. Second, a numerosity requirement would unfairly penalize the plaintiff who took affirmative steps to avoid further harassment by avoiding the defendant altogether

---

[4] We reject Gnerre's suggestion that only sexual harassment involving specific demands for sexual favors is actionable harassment under G. L. c. 151B, § 4 (6), although we note that at least one of Gnerre's comments could be construed as a request for a sexual favor. In determining whether Gnerre's conduct constituted sexual harassment, the commission applied the definition of sexual harassment promulgated by the Federal Equal Employment Opportunity Commission which defines sexual harassment as "sexual advances, requests for sexual favors, and *other verbal or physical conduct of a sexual nature*" (emphasis added). 29 C.F.R. § 1604.11(a) (1980). We note that the Massachusetts Legislature recently has adopted the same definition in the context of sexual harassment in the workplace. See G. L. c. 151B, § 1, as amended by St. 1987, c. 473, § 2. We believe that it is appropriate to apply the Legislature's definition of sexual harassment to the context of housing and thus conclude that sexual harassment is not limited to demands for sexual favors.

and would benefit the plaintiff who did not. Therefore, we decline to impose an arbitrary numerosity requirement as a matter of law.

2. *Substantial evidence.* Absent a determination that the commission committed an error of law, our review of the commission's decision is limited to an inquiry as to whether the commission's findings of fact are supported by substantial evidence. See G. L. c. 30A, § 14 (7). See also *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Comm'n,* 401 Mass. 357, 369 (1987); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 130, 134 (1976). Substantial evidence is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). See *Medi-Cab, supra* at 369. Under the substantial evidence test, a reviewing court is not empowered to determine the facts anew, or to judge credibility, or to draw different inferences from the facts found by the commission. *Id.* at 369. Our review of the evidence convinces us that the commission's findings of fact and conclusions of law were supported by substantial evidence.

There was ample evidence that Gnerre subjected Silverstein to unsolicited harassment of a sexual nature. She recounted four separate incidents of offensive speech of a sexual nature. Silverstein also testified that there were other incidents of harassment that she did not recall specifically. Silverstein's recollection of the four specific incidents of harassment was corroborated by the testimony of Ruth Silverstein and Kim Bergen. Although Gnerre denied that these incidents occurred, the commissioner specifically credited Silverstein's testimony over Gnerre's. The commissioner noted the specificity and consistency of Silverstein's testimony as well as her demeanor while testifying.

Gnerre contends that the incidents of harassment involved in this controversy were insufficient to permit a finding that the desirability of Silverstein's tenancy was significantly reduced. Thus, he did not discriminate against Silverstein in a term, condition or privilege of her tenancy. We do not agree. The evidence supported the commission's conclusion that

Gnerre's sexual harassment was very offensive and would cause a reasonable tenant to believe that the tenancy was less desirable.

The commission's conclusion that the offensiveness of Gnerre's conduct made Silverstein's tenancy objectively less desirable is supported by substantial evidence that Gnerre's harassment interfered with Silverstein's ability fully to use and to enjoy the leased premises. First, Silverstein became reluctant to have Gnerre enter her apartment to make repairs because having the apartment repaired required Gnerre's presence in her apartment. Second, Silverstein did not use fully the facilities of her apartment, namely the back porch to hang laundry, because she knew Gnerre often was around the two buildings he owned and because she feared encounters with Gnerre. Third, because of Gnerre's harassment, Silverstein said that whenever she saw Gnerre's truck parked outside the building, she attempted to avoid Gnerre by remaining in her apartment or by continuing to drive around the neighborhood until Gnerre left. Finally, Silverstein stated she was afraid to invite guests into her apartment because she feared that Gnerre would make a sexually offensive comment to her in the presence of her guests.

Substantial evidence supports the commission's determination that Silverstein's efforts to avoid encounters with Gnerre were objectively reasonable. Silverstein's affirmative efforts to avoid further incidents of harassment reduced Silverstein's ability fully to use and to enjoy her apartment. Thus, Gnerre's conduct reduced the desirability of Silverstein's tenancy and discriminated against her in a term, condition, or privilege of her tenancy. Gnerre's comments clearly were very offensive. Thus, there is no error in the commission's conclusion that Gnerre's comments could inhibit a reasonable tenant's enjoyment of the premises. The commission's decision that Gnerre violated G. L. c. 151B, § 4 (6), is supported by substantial evidence.

*Judgment affirmed.*