Fabricant, J.
Plaintiff Sean Albee (“Albee”) brought the present action in March 1996 against his former employer, New England Medical Center Hospitals, Inc. (“NEMCH”) and Ellen Bosque-Hamilton (“BosqueHamilton”), who is employed by NEMCH. Plaintiff alleges in Count II[1] that Bosque-Hamilton sexually harassed him beginning in May 1993, and that NEMCH failed adequately to investigate and respond to his complaints, thus subjecting him to a hostile work environment in violation of G.L.c. 151B, §4.
Both defendants have moved for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons set forth below, defendant Bosque-Hamilton’s motion will be allowed and defendant NEMCH’s motion will be denied.
BACKGROUND[2]
Plaintiff Sean Albee was employed by defendant NEMCH from December 1990 through the end of October 1994 as a Pharmacy Technician. Defendant Bosque-Hamilton was, at times relevant to plaintiffs complaint, employed by NEMCH as a Pharmacist. Beginning in October 1992, Albee worked the night shift (11:00 p.m. to 7:00 a.m.), on which he often worked with Bosque-Hamilton.
Under the structure in place at NEMCH, Albee formally reported to Debra Maclsaac, Assistant Director of Pharmacy, who had responsibility for his hiring and performance reviews, and for making recommendations regarding merit raises and discipline. A pharmacist such as Bosque-Hamilton did not have the authority to hire, fire or discipline a pharmacy technician such as Albee. However, Bosque-Hamilton’s job description as a pharmacist did include “overseeing the activities of technicians and supervising and monitoring the work of support personnel,” and Albee’s job description as a technician included working “under the general supervision of a registered Pharmacist.” Further, according to NEMCH’s answer to the complaint “[pjharmacists review all product prepared by technicians before it is dispensed and from time to time pharmacists assign technicians to prepare product.” According to Bosque-Hamilton’s deposition, “when Mr. Albee worked on [her] shift, [she was] the registered pharmacist that he was working under the general supervision of.” Bosque-Hamilton also had input into reviews of Albee’s work.
Beginning in May 1993, according to Albee, Bosque-Hamilton made a number of unwelcome advances toward him of a personal or sexual nature. Bosque-Hamilton’s conduct, according to Albee included: in about June of 1993, asking him his feelings about a relationship with a married, black woman;[3] urging him to meet her at a hotel in August of 1983; eight or ten occasions between September 1993 and January or February 1994 of her “bumping into me and grabbing my butt”; grabbing his genitals on three occasions between September of 1993 and January 1994; searching his wallet for a condom sometime in December 1993; telephoning him at his home on various occasions between December 1993 and May 1994, for such purposes as to urge him to bring a condom to work, to inquire about what he had told Debra Maclsaac, and to complain that he “didn’t send her anything or call her for Valentine’s Day”; sending him an e-mail message in February, 1994, urging that he see her outside of work; and slapping him on his buttocks in February of 1994.
In September 1993, Albee discussed BosqueHamilton’s conduct with Stephen Grabow, a pharmacist occupying the same position as Bosque-Hamilton. Albee spoke to Grabow “as a friend,” according to Albee’s deposition testimony, with the expectation that “he’d keep it in his confidence.” He did not tell Grabow “specific incidents.” According to Albee, Grabow “made fun oF Albee’s complaints and expressed the view that he would not be believed for lack of proof.
In November 1993, Albee met with Maclsaac and disclosed some, but not all, of the conduct he now alleges, leaving out the allegation, among others, that she had grabbed his genitals. Albee told Maclsaac that he did not want the hospital’s Human Resources Department to investigate, expressing concern that he would become the subject of rumors, as well as disagreement with the manner in which NEMCH had previously conducted an investigation of allegations that Bosque-Hamilton had made against another employee. According to Albee, however, he nevertheless gave Maclsaac several names of “people that she could talk to discretely.” Maclsaac did make some inquiries, which failed to elicit corroboration of Albee’s allegations.
In telephone conversations between November and January, Albee told Maclsaac that “the same thing was continuing.” In a telephone conversation in late January of 1994, Maclsaac asked Albee to “come in and speak to her or to speak to personnel or human resources about the situation that I was having with Ellen." Albee declined to do so until after his return from a scheduled vacation, and also told Maclsaac that he did not want her to tell Bill Gouveia, Director *595 of Pharmacy. Maclsaac told Albee that she intended to tell Gouveia that day. In February 1994, after Albee returned from his vacation, Maclsaac left messages for him attempting to schedule a meeting with the Human Resources Department. Albee did not return Maclsaac’s calls because, as he testified at his deposition “I had complained several times already and had gotten nowhere.” Maclsaac eventually did reach Albee, and scheduled a meeting with him and a representative of NEMCH’s Human Resources Department; however, Albee failed to appear at the meeting.
Albee’s next communication with NEMCH officials regarding the situation was by letter, dated February 17, 1994, from Albee’s attorney to the hospital’s president. The letter complained of sexual harassment by Bosque-Hamilton, of the manner in which both Grabow and Maclsaac had responded to Albee’s disclosures, and of various other events not pertinent to the present motions. The letter demanded $150,000, along with changes in Albee’s and Bosque-Hamilton’s work schedules, and other specified relief. Albee’s attorney sent a second letter, dated February 22, 1994, stating that neither he nor Albee would attend a scheduled meeting with hospital personnel, and directing that all further contact with Albee go through him.
After receiving these letters, NEMCH adjusted Albee’s and Bosque-Hamilton’s schedules so that they no longer worked together. The hospital’s Employee Relations Manager undertook an investigation, which included interviews with Albee, accompanied by his counsel, and with Bosque-Hamilton. The investigation generated a written report, dated April 5, 1994, expressing the conclusion that “there is insufficient evidence to support Mr. Albee’s claim of sexual harassment and a hostile work environment,” but that “there is a certain lack of professionalism among some of the employees who work the night pharmacy shift in terms of the types of conversations that take place.” The report indicated that actions to be taken would include permanent adjustment of schedules so as to minimize contact between Bosque-Hamilton and Albee, along with meetings of Employee Relations and Employee Assistance Program personnel with night pharmacy staff “to heighten sensitivity about sexual harassment” and “to discuss interpersonal relationships and workplace professionalism.”
On May 11, 1994, Albee filed a charge of discrimination with the Massachusetts Commission Against Discrimination (“MCAD”). In the space on the MCAD form for the “employer . . . who discriminated against me” he named NEMCH. In the space for “date most recent or continuing discrimination took place, he put ’’continuing." Instead of reciting the particulars of his allegations on the MCAD form, Albee appended to it a 26 page document reciting details of his allegations, but not including some of the conduct now alleged, particularly the incidents of “genital grabbing.” The document, in a form similar to a complaint to be filed in court, identified the parties as Albee and NEMC. It described conduct by Bosque-Hamilton between June and September of 1993, and in November 1993 and January and February of 1994; it also alleged subsequent conduct by NEMCH in response to Albee’s complaints.
On October 5, 1994, Albee filed with the MCAD a motion to amend his charge. The proposed amendment was again in the form of a complaint, with a list of individuals, including Bosque-Hamilton as well as Maclsaac, Gouveia, Grabow, and others, added as named respondents. The proposed amendment did not add reference to the physical contact now claimed, but not included in the original MCAD charge. BosqueHamilton filed an opposition to the motion to amend. On January 17, 1996, while the motion was pending, and before any action on it by the MCAD, the plaintiff received a notice of right to sue from the EEOC. He filed this action on March 21, 1996.
DISCUSSION
A motion for summary judgment is in order, and shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parly is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Nashua Corp. v. First State Insur. Co., 420 Mass. 196, 202 (1995); Wheatley v. American Telephone & Telegraph Co., 418 Mass. 394, 397 (1994); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving parties bear the burden of proving that there are no material issues of fact and that they are entitled to judgment as a matter of law. Highlands Insur. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997); Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Where the moving party does not bear the burden of proof at trial, “this burden need not be met by affirmative evidence negating an essential element of the ... case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesnerv. Technical Communications Corp., 410 Mass. 805, 809 (1991).
The court should not weigh the evidence, assess credibility or find facts. Riley v. Presnell, 409 Mass. 239, 244 (1991); Kelley v. Rossi, 395 Mass. 659, 663 (1985) (noting that motion judge improperly “weighed the evidence and made findings of fact"). If the parties are disputing any material fact, summary judgment is improper. Further, “[djiscrimination cases are often bound up in the sort of factual inquiries best left to a juiy. Through circumstantial evidence, parties seek to prove motive and intent, issues least suited for a determination on a motion for summary judgment.” Ruffino v. State Street Bank and Trust Co., 908 F.Supp. 1019, 1028 (D.Mass. 1995).
*596 1. Motion of Bosque-Hamilton
Defendant Bosque-Hamilton’s primary argument in support of her motion is that Albee’s failure to name her in his original MCAD complaint is fatal to his claim against her in the present action. Before a plaintiff may file a complaint in Superior Court under c. 151B, he must comply with statutory filing requirements by filing a charge with the MCAD within six months of the discriminatory conduct. G.L.c. 151B, §9; 804 CMR §1.03(4)(a). The charge must contain the “appropriate identification of the Complainant(s) and the person(s) alleged to have committed unlawful discriminatory acts[.]” Id. Absent compliance with these requirements, “(rjesort to judicial process is not available.” Tardanico v. Aetna Life & Casualty Company, 41 Mass.App.Ct. 443, 444 (1996).
The filing requirement serves both public and private purposes. First, it provides the agency with an opportunity to investigate and to conciliate the claim of discrimination, so as to fulfill its statutory mandate of eradicating discrimination, while at the same time promoting resolution of claims without litigation. Second, filing protects the legitimate interests of the named respondent, by providing notice of the claim and giving that party an opportunity to avoid litigation by engaging in the conciliation process. Carter v. Commissioner of Corrections, 43 Mass.App.Ct. 212, 217 (1997); Conroy v. Boston Edison Co., 758 F.Supp. 54, 57 (D.Mass. 1991); Sobotka v. Westfield Savings Bank, 2 Mass. L. Rptr. 193 (July 11, 1994).
Because of the important protections that the filing requirement provides to the respondent, courts have treated the naming of each respondent as an essential prerequisite to suit against that party. Where filing has occurred, but a respondent has not been named, courts have held that a subsequent suit against that respondent is barred. E.g., Powers v. H.B. Smith Company, 42 Mass.App.Ct. 657, 667 (1997); Reibold v. Eastern Cas. Ins. Co., Inc., 6 Mass. L. Rptr. 706 (June 4, 1997).
This general rule is not without exceptions. As a federal court has said in the Title VII[4] context,
Title VII courts excuse a plaintiffs failure to name a party only where there is a connection between the named and unnamed parties, a mutuality of interests, and an absence of prejudice to the unnamed party, as, for example, where the unnamed party has received adequate notice of the complaint and has been given an opportunity to participate in the conciliation process.
Hayes v. Henri Bendel, Inc., 945 F.Supp. 374, 378 (D.Mass. 1996); see also, McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 505 (1st Cir. 1996) (recognizing exception to charging requirement in cases of ‘substantial identity’ between the respondent named, or where named respondent acted as agent of defendant who had notice of and participated in conciliation proceedings, or defendant is ‘indispensable party’); Denny v. Westfield State College, 25 F.E.P. 957, 962 (D.Mass. 1981) (allowing plaintiff to sue college board of trustees, although not named in EEOC charge, because board was necessary for relief); Sobotka v. Westfield Savings Bank, 3 Mass. L. Rptr. 346 (April 17, 1994) (allowing suit to proceed against individual member of “upper level management” based on charge naming only employer organization).
In this case, Bosque-Hamilton is a relatively low-level employee of NEMCH. Although she had some supervisory responsibilities over Albee and others in his position, her position was far from the upper ranks of the institution’s management. There is no mutuality of interest or substantial identity between BosqueHamilton and NEMCH; indeed, the two defendants have opposing interests, since a finding that she engaged in the conduct alleged would likely jeopardize her position with NEMCH. Neither can it be said that NEMCH was acting as Bosque-Hamilton’s agent during the MCAD proceedings; there is nothing in the record to suggest that it had any agreement to indemnify her, or any other obligation, or reason, to protect her interests. Nor is Bosque-Hamilton an indispensable party without whom the parties cannot be afforded complete relief. Bosque-Hamilton has been prejudiced by not being named in the MCAD charge since, although she knew that she had been the subject of internal investigation at NEMCH, she had no notice of or opportunity to participate in the MCAD’s investigation or conciliation process. Under these circumstances, Albee’s failure to name BosqueHamilton in the MCAD charge is fatal to his claims against her, and she is entitled to summary judgment.
2. Motion of NEMCH
NEMCH argues that: (1) plaintiffs claims of harassment are time-barred to the extent that they allege conduct that occurred more than six months before the May 11, 1994, MCAD charge; (2) the harassment alleged to have occurred within the six months prior to the charge was not sufficiently pervasive to constitute a violation of G.L.c. 151B, §4; (3) it has no vicarious liability for Bosque-Hamilton’s conduct because it did not confer sufficient managerial authority on her to make her plaintiffs supervisor; (4) it cannot be held liable for failure to properly investigate and remedy Albee’s complaints because Albee himself prevented it from taking proper action; and (5) his claim for punitive damages is barred by his failure to cooperate with investigative efforts, and by NEMCH’s charitable immunity.[5] As to each of these arguments, the Court concludes that material disputes of fact exist requiring resolution at trial.
A. Continuing Violation
An employee complaining of unlawful discrimination under G.L.c. 151B must file a complaint with the MCAD within six months of the alleged discrimination. G.L.c. 151B, §5. An exception will be made and the filing deadline tolled where “the unlawful conduct *597 complained of Is of a continuing nature.” 804 CMR §1.03(2). Under the continuing violation doctrine, “a charge may encompass unlawful conduct outside of the limitations period, as long as at least one incident of unlawful conduct occurred within the limitations period." Ruffino, 908 F.Supp. at 1037.
Here, when the facts are viewed in the light most favorable to the plaintiff, as they must be at this stage, there is sufficient evidence to give rise to a triable issue as to whether the conduct claimed was a “continuing violation” that extended into the six-month period before the filing of the MCAD charge. Although the MCAD charge itself contained allegations of conduct by Bosque-Hamilton within the six-month period, as well as allegations of inadequate investigation by NEMCH during that time, the facts to be considered in addressing this argument are not limited to those contained in the MCAD charge. The charge filed with the MCAD need only identify the nature of the discrimination and the parties involved; a complainant is not required to describe evidence, or to set forth all details of the conduct alleged. Thus, although Albee’s failure to include in his MCAD charge certain incidents later described in his deposition testimony may provide fertile ground for attacking his credibility on cross-examination, it does not exclude consideration of those incidents in evaluating whether his claim is sufficient to establish a continuing violation.[6] With those incidents included in the analysis, his claim clearly does meet that standard.
B.Pervasiveness of Harassment
The Supreme Judicial Court has described a hostile work environment as one “pervaded by harassment or abuse.” College-Town, Div. of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 162 (1987). No particular number of incidents is required to establish this claim; the standard is that the alleged harassing conduct must be both subjectively and objectively offensive. Ramsdell v. Western Mass. Bus Lines, 415 Mass. 673, 678 (1993). A single occurrence of sexual harassment, evaluated from the perspective of the victim, can be sufficient to create a hostile environment. Gnerre v. Massachusetts Commission Against Discrimination, 402 Mass. 502, 508 (1988). The facts presented by Albee, considered in the light most favorable to him, are sufficient to present a jury question as to the severity of Bosque-Hamilton’s conduct and its offensiveness to Albee. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) (“in cases where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate”); Ruffino, 908 F.Supp. at 1028 n.2 (“the legislative decision to permit jury trials in Title VII cases emphasizes that the jury — not the judge— serves as the final decision-maker regarding factual disputes and credibility determinations before the court”).
C.Vicarious Liability
Under G.L.c. 151B, §4, an employer is vicariously liable for the sexually harassing conduct of its supervisory personnel, who act as the employer’s agents. College-Town, 400 Mass. at 165 (Legislature “intended that an employer be liable for discrimination committed by those on whom it confers authority”); see also Messina v. Araserve, Inc., 906 F.Supp. 34, 37 (D.Mass. 1995) (“employer is unconditionally liable for sexual harassment by its supervisors”). The evidence offered by Albee, again considered in the light most favorable to him, presents a genuine dispute of material fact as to whether Bosque-Hamilton was his supervisor for purposes of c. 151B. Although she was not management, and did not have the power to hire, fire or discipline, she concededly did have authority to perform direct substantive supervision of Albee’s work during the times they worked together, and had some degree of input into decisions that could significantly affect his employment status. This is enough to create a triable issue.
D.Adequacy of Investigation
NEMCH’s argument regarding the adequacy of its investigation suffers from the same flaw as the arguments previously addressed; it fails to consider the facts in the light most favorable to Albee, as the Court is required to do in ruling on a summaiy judgment motion. The evidence Albee offers, including his deposition testimony, indicates that he did not prevent investigation, but encouraged it, albeit within some limitations. Clearly there is contrary evidence, among which are contradictions in Albee’s own conduct and statements. But the existence of conflicting evidence warrants a trial, not summaiy judgment.
E.Punitive Damages
NEMCH’s charitable immunity, which derives from statute, G.L.c. 231, §85K, does not protect it from the damages authorized by the legislature under c. 151B. McMillan v. Massachusetts Society for Prevention of Cruelty to Animals, 168 F.D.R. 94, 97 (D.Mass. 1995) (“damages awarded pursuant to M.G.L.c. 151B are not . . . subject to the $20,000 limitation imposed by M.G.L.c. 231, §85K”). Whether the facts would support an award of punitive damages is a question best left for trial.
ORDER
For the foregoing reasons, defendant Ellen BosqueHamilton’s motion for summaiy judgment is hereby ALLOWED, and defendant New England Medical Center Hospital, Inc.’s Motion for Summary Judgment is DENIED.

 Only Count II of plaintiffs Complaint remains. Counts III, IV, v. and VI were all dismissed with prejudice by stipulation of the parties. Final judgment entered on these counts on March 12, 1997. Count I has also been dismissed by agreement of the parties.

 The facts recited are those set forth in affidavits and depositions submitted by the plaintiff and, to the extent not *598 contradicted by the plaintiff, those set forth in affidavits submitted by the defendants. See G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991) (in deciding a motion for summary judgment, the facts must be viewed “in the light most favorable to . . . [the nonmoving party], taking all the facts set forth in its supporting affidavits as true"). It should be noted that defendants deny the plaintiffs substantive allegations, including his account of the various alleged incidents of harassment.

 Albee is single and white; Bosque-Hamilton is married and black.

 Massachusetts courts will “apply Federal caselaw construing the Federal anti-discrimination statutes in interpreting G.L.c. 151B." Wheatley v. ATT, 418 Mass. 394, 398 (1994).

 NEMCH also argues that it is entitled to summary judgment on claims of relation. Because those claims were included in the stipulation of dismissal filed on February 21, 1997, this memorandum will not address that argument.

 For this reason, NEMCH’s cite to Morrell v. Precise Engineering, 36 Mass.App.Ct. 935 (1994), is inapposite.