McDonald, J.
The plaintiff, Donald A. Belanger (“Belanger”), filed this action against the defendant, Saint Gobain Industrial Ceramics, Inc. aka Norton Company (“Norton”), to recover damages for sexual harassment which occurred while Belanger was a Norton employee. A jury trial was held from May 12 through May 21 of 1998. The juiy returned a verdict on May 21, 1998 in Belanger’s favor, and awarded damages in the aggregate amount of $634,000.00.[1]
Norton has filed a motion for judgment notwithstanding the verdict, pursuant to Mass.R.Civ.P. 50(b), contending that there was insufficient evidence before the jury to warrant a verdict in Belanger’s favor. Belanger has opposed the motion, arguing that the jury was presented with ample evidence to support a *582 verdict against Norton. For the following reasons, the motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, is denied.
BACKGROUND
The following facts were adduced at the trial of this matter.
In January or February of 1995, Belanger returned to work at Norton after a long absence. Belanger’s extended absence from his employment at Norton stemmed from incidents of alleged sexual harassment of Belanger by Carlo Trafecante, a former co-worker at Norton. This Court ruled during trial that the incidents concerning Trafecante had occurred outside the limitations period and shared no nexus with conduct within the limitations period so as to give rise to a continuing violation; the Court accordingly instructed the jury that it could not consider the incidents that occurred between Belanger and Trafecante except with respect to Alan Hafty’s knowledge of those incidents. For that reason, this Court will not reiterate the facts of the incidents between Trafecante and Belanger here; suffice to say that Belanger testified to sexual advances by Trafecante, which he rejected and which he reported to Harty. Thus, the trial proceeded on the question of whether Harty’s conduct toward Belanger constituted sexual harassment for which Norton was liable. Belanger returned to work part-time at Norton in January or February of 1995. At that time, Harty, Belanger’s group leader, commented to Belanger that Trafecante had called another supervisor at Norton and was attempting to have Belanger fired. Belanger was hospitalized for a suicide attempt shortly after this incident.
Belanger returned to full-time employment at Norton in April of 1995. Within two weeks of his return to work, two incidents occurred. On April 4, 1995, Harty, while measuring Belanger’s pant size for a uniform, commented that “I hope nobody sees me doing this. I don’t want them to think I’m like you ..." On April 11, 1995, five work days after Belanger’s return to full-time employment Harty informed Belanger that Trafecante had called him and told him that Belanger was a homosexual. Belanger left his employment at Norton shortly thereafter and did not return.
The trial of this mattér commenced on May 12, 1998. At the close of the plaintiffs evidence, Norton moved for a directed verdict in its favor, arguing, inter alia, that the six month statute of limitations on actions filed pursuant to G.L.c. 15 IB precluded recovery. In support of its motion, Norton argued that Trafecante’s conduct occurred outside the statute of limitations, and that his conduct was not substantially related to any conduct occurring within the limitations period so as to constitute a continuing violation. The Court denied the motion at that juncture of the case, and Norton renewed the motion after the close of all the evidence. At that time, the Court ruled that Trafecante’s conduct and any other incidents occurring prior to October 14, 1994, could not be considered by the jury for purposes of establishing a hostile work environment; the Court went on to rule, however, that the jury could consider Harty’s knowledge of Trafecante’s conduct in determining whether the events within the limitations period constituted a hostile work environment in violation of G.L.c. 15IB.
The jury returned a verdict on May 21, 1998 in Belanger’s favor.
DISCUSSION
Norton has filed this motion for judgment notwithstanding the verdict, arguing that Harty’s conduct did not constitute sexual harassment; that Harty’s knowledge of Trafecante’s conduct should not have been considered by the jury; that Norton is not liable for Harty’s conduct; and that the evidence adduced at trial did not support a punitive damage award. “The standard to be used on a motion for judgment notwithstanding the verdict is the same as that on a motion for a directed verdict . . . that is, Does the evidence, construed against the moving party, justify a verdict against him?” D'Annolfo v. Stoneham Housing Authority, 375 Mass. 650, 657 (1978) (citations omitted).
Conflicting evidence alone does not justify judgment nov. Tosti v. Ayik, 394 Mass. 482, 494 (1985). ”[I]t is of no avail for the defendant to argue that there was some or even much evidence which would have warranted a contrary finding by the jury.” Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., 381 Mass. 1, 4 (1980) (citations omitted). In short, in ruling on a judgment notwithstanding the verdict, the court may not substitute its judgment of the facts for that of the jury. O'Shaughnessy v. Besse 7 Mass.App.Ct. 727, 729, rev. den. 378 Mass. 801 (1979).
Norton sets forth several arguments in support of its motion, which shall be addressed separately here.
A. Harly’s Conduct Did Not Constitute Sexual Harassment
Norton argues that Harty’s conduct did not constitute sexual harassment so as to create liability under G.L.c. 151B. Norton contends that the incidents of alleged harassment that the jury was permitted to consider, i.e., Harty’s conduct within the limitations period, were insufficient as a matter of law to create a hostile work environment.
In order to recover on a claim of a hostile work environment a plaintiff must establish that (1) he was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the sexual advances or sexual conduct was unwelcome; (3) the conduct was sufficiently severe or pervasive to cause the work environment to become hostile, intimidating or humiliating to an objectively reasonable person in the plaintiffs position; and (4) this conduct affected the plain tiffs job performance or altered the terms and conditions of his employment. College-Town, Division of Interco, Inc. v. Massachusetts *583 Commission Against Discrimination, 400 Mass. 156, 162 (1987). See also, Gnerre v. Massachusetts Commission Against Discrimination, 402 Mass. 502, 507 (1988). In arguing for judgment notwithstanding the verdict, Norton contends that Belanger failed to establish that Harty’s conduct was of a sexual nature. Norton further contends that Belanger was an unreasonably sensitive plaintiff, and that Belanger failed to establish that Harty’s conduct would have been offensive to a reasonably objective person,
With respect to Norton’s contention that Harty’s comments were not “of a sexual nature,” as that phrase is used in defining sexual harassment, see G.L.c. 151B, §1(18), this argument is meritless. While Norton may be correct with regard to Harty’s comment to Belanger in January or February of 1995 that Trafecante was calling supervisors at Norton trying to have Belanger terminated, Norton is not correct with regard to Harty’s two other comments after Belanger returned to work full-time. Harty’s comments, occurring within one week after Belanger’s return to work, concerned Belanger’s sexual orientation and are therefore unequivocally “of a sexual nature.”
With respect to Norton’s contentions that Belanger was unreasonably sensitive and that Belanger failed to establish that Harty’s conduct would have been offensive to a reasonable person in his position, these arguments also are without merit. “In determining whether the [employer’s] conduct was of such a nature that it [interfered with the plaintiffs work environment], we view the evidence of harassment from the view of a reasonable person in the plaintiffs position.” Gnerre, 402 Mass. at 507 (emphasis added). This standard requires a fact finder to view the harassment from both objective and subjective perspectives. It is manifest from the evidence introduced at trial that Belanger subjectively believed that Harty’s comments were offensive and intimidating; the question then remains whether Belanger presented sufficient evidence which would warrant an objectively reasonable person in believing that his workplace was hostile.
In arguing that the workplace was not objectively hostile, Norton emphasizes the fact that Harly made only two comments to Belanger regarding his sexual orientation. Norton, however, ignores the fact that the first of these comments was made on the first day that Belanger returned to work after a long absence, which had resulted from what the juiy could have found to be a campaign of sexually harassing behavior by Trafecante,[2] and the second comment occurred only five work days later. Contrary to Norton’s contention that these two incidents, as a matter of law, are insufficient to create a hostile environment, it has recently been held that “[a] single occurrence of sexual harassment from the perspective of the victim, can be sufficient to create a hostile environment.” Albee v. New England Medical Center Hospitals, Inc. & Another, 7 Mass. L. Rptr. 593, 1997 WL 691524 (Mass. Super. 1997).
The Massachusetts courts impose no “numerosity requirement” of incidents which would constitute sexual harassment. In Gnerre v. Massachusetts Commission Against Discrimination, 402 Mass. at 507, the court specifically rejected imposing a numerosity requirement as to how many incidents were required to constitute a sexually hostile environment, and discussed extensively its reasons therefor. The Court stated that
We reject imposing any numerosity requirement [for establishing a sexually hostile environment] for two reasons. First, a legal standard that requires a plaintiff to prove a minimum number of incidents of harassment does not recognize the variety of conduct that may constitute sexual harassment. Further, it does not recognize that different conduct, depending upon its nature, can more or less quickly render a tenancy less desirable... the more offensive the comments the fewer incidents of harassment may be required to demonstrate the objective reasonableness of the claim that the value of the tenancy was diminished for a plaintiff. A numerosity requirement would not allow the commission or a court to balance the severe or the threatening nature of the conduct against its frequency of occurrence in determining whether the plaintiffs tenancy was rendered less desirable. Second, a numerosity requirement would unfairly penalize a plaintiff who took alternative steps to avoid further harassment by avoiding the defendant altogether and would benefit the plaintiff who did not.
Id. at 508 (emphasis added). This Court cannot make the arbitrary determination that two incidents cannot constitute sexual harassment; that determination of fact is within the province of the jury.
Moreover, although the incidents in this case were few in number, the temporal relationship between the incidents is critical; Harty’s two comments concerning Belanger’s sexual orientation occurred within a one-week period immediately after Belanger returned to work.[3] ”[W]hether an environment is ‘hostile’ or ‘abusive’ can be determined only by looking at all of the circumstances . .. [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance.” Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). In the totality of the circumstances of this case, the jury reasonably could conclude that these two comments within a short period of time were sufficiently severe or pervasive as to be offensive, intimidating or humiliating to an objectively reasonable person and did in fact alter the terms and conditions of Belanger’s employment which entitled Belanger to recovery under G.L.c. 15 IB.
*584 As stated previously, a court may not substitute its factual conclusions for that of the jury. O’Shaughnessy, 7 Mass.App.Ct. at 729. The jury was properly instructed concerning the elements of a hostile work environment and, after considering the evidence adduced at trial, found that such an environment existed. This Court declines to nullify that determination.
B. Harty’s Knowledge of Trafecante’s Conduct Should Not Have Been Considered by the Jury in Determining Hostile Work Environment
Norton contends that this Court erred in instructing the jury that it could consider Harty’s knowledge of Trafecante’s conduct in evaluating the severity or pervasiveness of Harty’s conduct. It argues that by allowing the jury to consider Harty’s knowledge, the jury was effectively allowed to consider Trafecante’s conduct itself in awarding damages, rendering the Court’s preclusion of that issue a nullity.
This Court instructed the jury that it could not consider Trafecante’s conduct as a factor in determining whether a hostile work environment existed or in awarding damages; this decision based on the fact that there was no “nexus” or substantial relationship between Trafecante’s conduct outside the limitations period and Harty’s conduct within the limitations period so as to give rise to a continuing violation of G.L.c. 151B. See Sabree v. United Brotherhood Carpenters and Joiners Local No. 33, 921 F.2d 396, 401-02 (1st Cir. 19,90); see also, Desrosiers v. Great Atlantic & Pacific Tea Company, Inc., 885 F.Supp. 308 (D.Mass. 1995). The jury was not precluded, however, from considering Hariy’s knowledge of Trafecante’s conduct in determining whether Harty’s conduct within the limitations period was so severe and pervasive as to establish a hostile work environment.
[W]hen a plaintiffs hostile environment claim is challenged on a statute of limitations ground, specific incidents within the statutory period cannot be examined in isolation. Instead, such evidence must be considered in light of other factual allegations extending outside of the filing period. These discriminatoiy acts, taken together, must be examined to determine whether their cumulative effect created a hostile work environment for the plaintiff, during the relevant limitations period.
Ruffino v. State Street Bank and Trust Company, 908 F.Sup. 1019, 1039 (D.Mass. 1995). Simply stated, when determining whether a hostile work environment existed, a jury must determine the totality of the circumstances in determining whether the conduct on the part of the employer was severe or pervasive. Harris v. Forklift Systems, 510 U.S. U.S. 17 (1993).[4]
In this case, the totality of the circumstances includes Harty’s knowledge of Belanger’s precarious mental state and past sexual harassment by a coworker. For the jury to understand fully the subjective effect that Harty’s comments had on Belanger, and the objective effect those comments would have had on a reasonable person in Belanger’s position, it was necessary to understand Harty’s comments in the context of Belanger’s past experiences at Norton and in the context of Harty’s awareness of Belanger’s experiences. In this case the jury could not determine the objective and subjective effects of Harty’s comments without being aware of Harfy’s knowledge of prior events.
C. Norton Is Not Liable for Harty’s Conduct
Norton argues that it is not liable for Harty’s conduct as Harty was only a low-level supervisor. The one Massachusetts case cited by Norton in support of its argument, College-Town Division of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156 (1987), is the leading Massachusetts case on hostile work environment and supervisor liability. Noticeably absent from College-Town, however, is any discussion of the level of supervisory authority required to hold an employer vicariously liable for a supervisor’s harassment. College-Town states that
It is clear that the Legislature intended that an employer be liable for discrimination committed by those on whom it confers authority . . . The Legislature sought to remove discriminatory barriers to full participation in the workforce. Supervisors who create a sexually harassing work environment present a serious barrier to that goal. Harassment by a supervisor stigmatizes an employee, and appears to reflect an attitude of the employer that the employee is not considered equal to other employees. In addition, harassment by a supervisor carries an implied threat that the supervisor will punish resistance through exercising supervisory powers, which may range from discharge to assignment or work, particularly exacting scrutiny, or refusal to protect the employee from coworker harassment . . . Although coworkers or even outsiders may also be capable of creating a sexually harassing work environment, it is the authority conferred upon a supervisor by the employer that makes the supervisor particularly able to force subordinates to submit to sexual abuse.
Id. at 165-66.
Norton has also cited several federal cases from various circuits in support of its argument. Unfortunately for Norton, all of these cases concern supervisory liability under Title VII — not under G.L.c. 15 IB — and Massachusetts law diverges from federal law on this issue. Massachusetts adheres to a “strict liability” standard with regard to harassment by supervisors. See College-Town, 400 Mass. 156 (1987). To date, the Massachusetts appellate courts have not ruled that a company is not vicariously responsible for harassment committed by a low-level supervisor, and this Court also declines to so rule.[5] Evidence was presented to the jury that Harty held a position of *585 supervisory authority within Norton, with the power to assign work and recommend hiring and firing of employees. Accordingly, under Massachusetts law, Norton is responsible for any sexual harassment committed by Harty, regardless of whether it knew of the conduct.
D. Evidence Does Not Support Punitive Damage Award
Norton contends that there was insufficient evidence before the jury of conduct on the part of Harty or Norton to return an award of punitive damages.
Punitive damages are appropriate “where a defendant’s conduct warrants condemnation and deterrence.” Although G.L.c. 151B does not provide any limit for punitive damages, the award of such damages is governed by common law and constitutional principles. . . . The Restatement (Second) of Torts §908(2) (1979) provides that “punitive damages may be awarded for conduct that is outrageous, because of the defendant’s evil motive or his reckless indifference to the rights of others.”
Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 16-17 (1998) (citations omitted).
Contrary to Norton’s contentions, in the instant case the jury could have found that Harty’s comments, occurring within the brief two week period after Belanger’s return to work, made with the knowledge of Belanger’s precarious mental state and past sexual harassment by Trafecante, were sufficiently outrageous and reprehensible to warrant condemnation, and to require deterrence of any such future conduct by an award of punitive damages. Moreover, the award of punitive damages in this case in the amount of $108,000.00 does not appear to be “excessive or irrational” when the conduct which occurred, and the other damages which were awarded, are considered. See Bain v. Springfield, 424 Mass. 758, 768 (1997).[6] Accordingly, the award of punitive damages shall stand.
ORDER
For the foregoing reasons, it is ORDERED that the Defendant’s Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial is DENIED.

The jury awarded back pay in the amount of $102,000.00, front pay in the amount of $372,000.00, emotional distress damages in the amount of $52,000.00, and punitive damages in the amount of $108,000.00.

Trafecante’s behavior ultimately resulted in his discharge from Norton.

 It is important to note the time period of the harassment in Gnerre as compared to the time period in the instant case. In Gnerre, the tenant was subjected to “four separate incidents of offensive speech of a sexual nature” over a two-year period. Id. at 509. In the instant case, Belanger was subjected to two incidents of offensive speech of a sexual nature in a one-week period.

Indeed, the EEOC guidelines on sexual harassment state that “[i]n determining whether the alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incident occurred." 29 C.F.R. §1604.11(b) (1999) (emphasis added).

In so ruling, this Court is not opining that Harty is in fact a low-level supervisor.

In Bain, a retaliatory discharge case under G.L.c. 151B, the jury did not award the plaintiff compensatory damages, but awarded punitive damages in the amount of $100,000.00. Even in light of the jury’s failure to award any compensatory damages, the Supreme Judicial Court found that the punitive damage award was not excessive or irrational. Bain at 768-69. In the instant case, the jury awarded Belanger substantial compensatory damages; the punitive damage award represents only seventeen percent of the entire verdict, and does not seem disproportionate in relation to the conduct which occurred.