JILL RAMSDELL *vs.*
WESTERN MASSACHUSETTS BUS LINES, INC., & others.[1]

Hampshire. May 6, 1993. - June 30, 1993.

Present: LIACOS, C J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ

*Anti-Discrimination Law*, Sex, Prima facie case, Burden of proof. *Massachusetts Commission Against Discrimination. Employment*, Discrimination, Sexual harassment.

In a proceeding before the Massachusetts Commission Against Discrimination in which a hearing commissioner found that an employee, who had alleged sexual harassment by her employer, failed to show that the employer's conduct was intentionally or in effect hostile, intimidating, or humiliating to the employee in a way which affected her performance or the conditions of her employment, there was substantial evidence to support the hearing commissioner's conclusion that the employee had not established a prima facie case of sexual discrimination. [676-679]

In a proceeding before the Massachusetts Commission Against Discrimination in which an employer offered nondiscriminatory reasons for failing to promote or to pay equal wages to a female employee, there was substantial evidence to support a hearing commissioner's conclusion that, absent the employee's showing that the employer's reasons were a pretext, the disparate treatment with regard to payment of wages or promotion was not the result of gender-biased discrimination. [679]

CIVIL ACTION commenced in the Superior Court Department on November 21, 1991.

The case was heard by *John F. Murphy, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard M. Howland (Jean M. Fielding* with him) for the plaintiff.

---

[1] John Herlihy, Longueil Bus Company, and the Massachusetts Commission Against Discrimination.

*Philip J. Shine* for Western Massachusetts Bus Lines, Inc., & others.

*Jerrold S. Levinsky* for Massachusetts Commission Against Discrimination.

NOLAN, J. The plaintiff, Jill Ramsdell, appeals from a judgment of the Superior Court upholding a decision and order of the Massachusetts Commission Against Discrimination (MCAD) to dismiss her complaint against her employer for alleged sexual discrimination.[2] We transferred the case here on our own motion. We affirm.

In her complaint filed in July of 1986, the plaintiff alleges three distinct counts of sexual discrimination: sexual harassment, unequal pay, and denial of a promotion. A hearing commissioner heard the evidence in July of 1988. Two and one-half years later, the commissioner finally issued her decision. The commissioner found no substantial evidence to support the plaintiff's claims and ordered the charges be dismissed. The plaintiff appealed to the full commission which affirmed the decision.

We begin our discussion by summarizing the facts as found by the hearing commissioner. Jill Ramsdell was hired by Western Massachusetts Bus Lines, Inc., a Massachusetts corporation, in March of 1982. She began working as a charter clerk, processing charter orders and scheduling buses. Ramsdell reported directly to John Herlihy, the president and chief operating officer.

The hearing commissioner found the environment "rife with sexually explicit language and sexual innuendos." Witnesses testified that the language in the office was "rough" and abounding with raw sexual banter. A nude male calendar hung on the wall, and Herlihy's wife, together with at least one female employee, brought sexually explicit jokes to the office and distributed them freely.

Lewd conduct persisted at social gatherings as well. At Herlihy's fortieth birthday party, the entire staff presented

---

[2] A person aggrieved by an order of the MCAD may obtain judicial review in the Superior Court pursuant to G. L. c. 151B, § 6 (1990 ed.).

him with a box of "gag" gifts including sexually explicit paraphernalia. The employees contributed to hire a professional belly dancer for a male employee's birthday. At still another birthday, cakes in the form of a naked male and female were presented respectively to a female employee and to Herlihy. Ramsdell participated each time. At another event, employees, including Ramsdell, constructed for Herlihy a costume dubbed "U.S. Sex Express."

Focusing on Herlihy, the commissioner found that he had repeatedly asked Ramsdell to perform sexual favors and addressed her using sexually explicit language and profanity. Ramsdell responded in kind. These vulgar conversations often occurred in the presence of others. Ramsdell testified that at one point Herlihy chased her and pinned her up against a garage wall. However, because this testimony was contradicted by another eyewitness, the commissioner did not credit Ramsdell's account. Herlihy also made derogatory references to women in general.

Focusing on Ramsdell, the commissioner found that she "invited" or provoked these bawdy exchanges. At least one witness testified that the profanity and vulgarity began with Ramsdell's arrival. Ramsdell herself admitted to using extremely vulgar and profane language in the workplace and to participating in sexual jokes. For Herlihy's fortieth birthday, she inscribed the words, "to tickle your fancy," on a facsimile of male genitals as part of his gag gift. Once, after work, she and two other female employees followed Herlihy into a men's room and stared at him. More than once she pinched his buttocks and shouted, "Got 'ya, cutie!" She even grabbed his genitals in the presence of his wife and another employee. On one occasion she yanked down his jogging pants.

Ramsdell was promoted to sales manager in 1983. Her promotion broadened her responsibilities. She expressed interest in the general sales manager position. Herlihy, however, hired a male from outside the company to fill that particular position. At this point, Ramsdell filed a complaint alleging sexual discrimination. Prior to that hiring decision, Herlihy himself had filled the position of general sales man-

ager and had removed Ramsdell from some of her supervisory functions due to her poor performance. Her employee evaluations for that period reflected her shortcomings. The commissioner concluded that Herlihy did not offer Ramsdell the promotion because he believed in good faith that she was not qualified.

At some point, Ramsdell discovered that her weekly salary was less than that of her male counterpart at the Longueil Bus Company. The commissioner found that the discrepancy was justified by the man's experience, customer base, and greater responsibilities. She concluded that there was no sexual discrimination involved.

The commissioner found that Ramsdell's distress was not a result of her workplace environment. Although Ramsdell testified that the alleged harassment began right after she started work in 1982, she chose not to file a complaint until four years later. The commissioner found that Ramsdell was "a willing and active participant and often the prov[o]cateur" in creating the atmosphere described above.

We shall affirm a decision and order of the MCAD unless the findings and conclusions are unsupported by substantial evidence or based on an error of law. G. L. c. 151B, § 6 (1990 ed.). G. L. c. 30A, § 14 (7) (1990 ed.). *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 170 (1987), and cases cited. Because of our limited role, we "must defer to an administrative agency's fact-finding role, including its right to draw reasonable inferences from the facts found." *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 224 (1978). Credibility is an issue for the commissioner and not for this court. *Trustees of Deerfield Academy* v. *Director of the Div. of Employment Sec.*, 382 Mass. 26, 31-32 (1980). In this case, we conclude that the MCAD's decision and order finds substantial support in the evidence and that there was no error of law.

1. *Sexual harassment.* We held in *College-Town, supra* at 162, that sexual harassment may constitute a violation of G. L. c. 151B, § 4 (1), which prohibits employment discrimina-

tion on the basis of gender. We recognized that "[a] work environment pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, poses a formidable barrier to the full participation of an individual in the workplace." *Id.* General Laws c. 151B, § 1 (18) (1990 ed.), defines "sexual harassment" as "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (*a*) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (*b*) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment." There are no allegations that submission to sexual requests or the like was ever a condition or quid pro quo of Ramsdell's employment, either explicitly or implicitly; therefore, we shall focus on the definition under § 1 (18) (*b*). The commissioner found that "there is no credible evidence that the work environment in this situation was hostile, intimidating or humiliating to Ms. Ramsdell, or that it posed any barrier on her part to full participation in the work place." As a result, the commissioner concluded that Ramsdell had not established a prima facie case of sexual discrimination and dismissed the complaint. After review, we hold that the commissioner's conclusion was based on substantial evidence and was without error in law.

Ramsdell asserted that her work place environment interfered with her job performance and that she found the atmosphere to be offensive, intimidating, or humiliating. The flaw in Ramsdell's argument is that the commissioner did not credit Ramsdell's testimony on that issue.[3] Other witnesses

---

[3]Although the commissioner found that some of Herlihy's conduct was uninvited, substantial evidence supports her conclusion that these incidents were not hostile, intimidating, or humiliating to Ramsdell. Our opinion in *Gnerre* v. *Massachusetts Comm'n Against Discrimination*, 402 Mass. 502,

testified that the atmosphere was "light hearted" and that the remarks were delivered in a "joking manner." The commissioner found that Ramsdell did not take offense nor did she decline to participate in the contact described above.[4] Perhaps the most telling evidence is that the commissioner found that Herlihy and Ramsdell frequently traveled together on one-day business trips without incident. We hold, therefore, that the commissioner's conclusions were based on substantial evidence.

The plaintiff claims that the MCAD's decision and order is contrary to our decision in *College-Town, supra* at 162. We disagree. In *College-Town*, the hearing commissioner concluded that the conduct at issue was unwelcomed by the plaintiff. *Id.* at 162. Specifically, the commissioner found that the victim in *College-Town* cried and "felt cheap and degraded" when confronted with her supervisor's offensive conduct. *Id.* at 158. Furthermore, the plaintiff in *College-Town* conveyed her negative reaction to a coworker and reported the activity within months of its onset. *Id.* at 158-159. By contrast, the commissioner in this case concluded that "there is no credible evidence that Herlihy's behavior offended or injured . . . . the Complainant." We do not review the commissioner's judgment concerning the credibility of witnesses. *Trustees of Deerfield Academy, supra* at 31-32.

Let there be no doubt that we condemn the behavior exhibited here. Indeed, we agree with the commissioner that "under ordinary circumstances, such conduct would most assuredly constitute a violation of G. L. c. 151B." Still, an employee who alleges sexual harassment must show that the employer's conduct was intentionally or in effect hostile, in-

---

507 (1988), is not to the contrary. In *Gnerre*, we stated that, in determining whether her landlord's conduct made the plaintiff's tenancy "significantly less desirable" for the purposes of G. L. c. 151B, § 4 (6), "we view the evidence of harassment from the view of a reasonable person in the plaintiff's position." *Id.*

[4] If participation were an implicit condition of employment, then it would constitute discrimination under c. 151B, §§ 1 (18) (*a*) and 4 (1). However, Ramsdell made no such allegation here.

timidating, or humiliating *to the plaintiff* in a way which affected her performance or the conditions of her employment. See G. L. c. 151B, § 1 (18). See also *College-Town, supra* at 162. Simply put, Ramsdell did not prove her case to the commissioner.

2. *Unfair treatment.* We have stated that discriminatory motives behind the failure to promote or to pay equal wages can be inferred from disparate treatment of the sexes. See *Smith College, supra* at 227. However, once the employer offers nondiscriminatory reasons for the disparate treatment, the burden shifts back to the plaintiff to show that the employer's reasons are merely pretext. *Id.* at 229. In this case, we agree with the commissioner that the plaintiff made no such showing. Ramsdell points to a pay discrepancy between herself and a man employed in the same position with the Longueil Bus Company, as evidence of gender discrimination. On the other hand, the defendants presented evidence which the commissioner found credible that the minor discrepancy ($10 per week) was justified by his greater experience, broader range of duties, and larger customer base. Therefore, substantial evidence supports the commissioner's conclusion that the disparate treatment with regard to pay was not the result of sexual discrimination.

The plaintiff's claim with regard to the promotion fails in similar fashion. Although Herlihy did hire a man to fill a position which Ramsdell wanted, there is no evidence that he did so for discriminatory reasons. The defendants presented evidence before the commissioner that Ramsdell was not qualified for the position, and Ramsdell offered no evidence indicating that these reasons were mere pretext.

In summary, we hold that the commissioner's conclusions were supported by substantial evidence and without error of law.

*Judgment affirmed.*