Brassard, J.
Plaintiff Christine Weston (“Weston”) brought this action against the Town of Middleborough (“Town”), the Middleborough Gas and Electric Department (“MG&ED”), the Middleborough Gas and Electric Department Board of Commissioners (“Board”) and Michael Stagliola (“Stagliola”) seeking damages for defendant Stagliola’s allegedly sexually harassing and discriminatory conduct toward her in the workplace. Plaintiff makes claims of sexual harassment, retaliation and discrimination in violation of G.L.c. 15 IB against the Town in Count I, the MG&ED in Count II, the Board in Count III and Stagliola in Count IV. The matter is now before the court on the Town’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6) and defendants, MG&ED, Board, and Stagliola’s, motions for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons set forth below, the Town’s motion is DENIED, the MG&ED’s motion is DENIED, the Board’s motion is DENIED and Stagliola’s motion is DENIED.
BACKGROUND
The following facts are taken from the summary judgment record and are viewed in the light most favorable to the non-moving party, in this case, plaintiff Weston.
MG&ED is a municipal organization that provides gas and electric services to customers in Middleborough and Lakeville. It employs about fifty full-time and part-time employees. Pursuant to G.L.c. 164, the Board oversees the MG&ED. The Board is comprised of five commissioners who are elected in town-wide elections. The Board members are volunteers and receive no compensation for their services. In 1997, Stagliola was elected as a commissioner to the Board for a two-year term. He was elected as Chairman of the Board in 1998.
In April 1990, plaintiff responded to an advertisement seeking applications for a part-time clerk. Specifically, the ad read:
PART-TIME CLERK
The Middleborough Gas & Electric Department is now accepting applications for a part-time clerk to the Board of Gas and Electric Commissioners.
The hours worked will be one or two evenings per month at the rate of $8.00 per hour.
Duties shall include dictation, transcribing, xeroxing and distribution of meeting minutes and compiling letters relative to board issues.
Applicants must possess the following qualifications: confidentiality, dictation: (or equivalent), skilled typing and a general knowledge of office machines and their use.
Interested applicants should apply in writing: (no telephone inquiries) to: Karen E. Anthony, Administrative Assistant To The General Manager, 32 South Main St., Middleborough, MA 02346.
Since April of 1990, plaintiff has served as clerk/secretary for the Board. As indicated in the advertisement above, her duties include posting the meetings, sending out reminders to the commissioners, typing agendas for the Board meetings, setting up meeting rooms, recording the meetings, and typing motions, votes and minutes of the meetings. Plaintiff is required to attend the Board meetings which take place at night and are open to the public. Additionally, plaintiff is required to perform tasks not outlined in the ad. During the weeks between the monthly meetings, plaintiff is given specific instructions by the Board on how, when and where to perform these other various tasks. Plaintiff was supervised by Stagliola following his appointment as Chairman in 1998. Plaintiff alleges that during the eight years prior to Stagliola’s appointment as Chairman, she successfully served in her position as Clerk/Recording Secretary to the Board and was paid in a timely manner for her work and for her expenses, usually within 30 days of submission of the invoice.
From the May 1998 meeting on, Stagliola instructed the plaintiff to sit next to him at the meetings so that he could “cue” her. Defendant contends that he made this request because of plaintiffs familiarity with the procedures government entities must follow during public meetings. Plaintiff alleges that none of the prior chairmen had ever made a similar request. At the meeting held on August 11, 1998, plaintiff alleges that while the lights were off during a presentation, Stagliola jabbed at her by striking her arm, leg and foot with his fist. Further, he elbowed her in the arm and struck her in the shoulder with his fist. Plaintiff states that Stagliola also kicked her with his foot on her ankle/leg, banged his knee against hers, and touched her on her thigh with his fist and knee multiple times (out of sight, under the table). Although Stagliola’s behavior generally occurred when he wanted plaintiff to write, record or to stop, it was not limited to these occasions. Plaintiff alleges that he also touched and hit her whenever he was angry or upset with the way the meeting was proceeding or in response to someone else talking.
Stagliola exhibited similar behavior at the Board meeting held on August 25, 1998. Again he elbowed and struck the plaintiff in the shoulder with his fist several times. He also kicked her under the table, banged her on the knee/leg with his knee and touched her thigh with his fist. At the September 8, 1998 Board meeting, plaintiff tried to position the table and seats so as to prevent physical conduct by Stagliola. While *325 plaintiffs attempt was successful for under the table contact, Stagliola continued to elbow and jab her on her arms and shoulder.
On the following day, September 9, 1998, plaintiff called Board Commissioner Ventura (“Ventura”) and told him what Stagliola had been doing to her and how upset she was about the continuing harassment. Plaintiff was in tears. Ventura told her to keep her chin up, that she was doing a good job, for her to just keep taking the minutes as she normally did and that her job was safe with him. On either September 12th or 13th, 1998, plaintiff called Ventura again to discuss Stagliola’s harassment, as well as her concerns that Stagliola had been making her job more difficult and had been making unreasonable demands. Ventura told plaintiff that Stagliola had been talking about her unfavorably in public. Ventura also told plaintiff he would make some calls about the situation, including a call to James Smith (“Smith”), the MG&ED General Manager. Plaintiff indicated to Ventura that she could not afford to lose her job and that she was concerned as to what might happen as a result of speaking up. Plaintiff also complained about Stagliola’s behavior to Helen Andrews, Smith’s secretary. When she related her concerns to Helen Andrews, plaintiff was emotionally upset and ciying.
Stagliola’s behavior continued at the next Board meeting held on October 13, 1998. During the meeting, Stagliola hit the plaintiffs shoulder with his fist and elbowed her in the arm. While the lights were turned off during a presentation, Stagliola struck the plaintiffs thigh with his fist and struck her leg/ankle with his foot. This behavior occurred again at the November 10, 1998 meeting.
In December of 1998, plaintiff learned that the Board had discussed her complaints about Stagliola with him at an executive session held on November 17, 1998. Plaintiff was neither asked to attend the meeting nor notified of its occurrence or purpose. Following the November 17th meeting, Ventura called the plaintiff to commend her on her job performance, and told her not to worry because “Mike” (Stagliola) “didn’t get the big picture” and that were only a few months until the next election. Ventura told the plaintiff that he had previously relayed plaintiffs concerns regarding Stagliola’s behavior to Smith, the MG&ED General Manager.
Plaintiff alleges that apart from the physical discomfort she experienced from Stagliola’s conduct, she suffered extreme and severe emotional pain and psychological distress. Plaintiff states that her self-confidence was undermined, that she was constantly on edge and had difficulty concentrating at work. Plaintiff began to dread her job and often felt like crying during the meetings, leaving the meetings early or just not showing up at all.
After speaking up about the sexual harassment she was subjected to, plaintiff alleges that various MG&ED and Board officials ostracized and ignored her, which conduct also interfered with the performance and enjoyment of her job. Additionally, plaintiff alleges that shortly after she complained about Stagliola’s harassing conduct, Stagliola unjustifiably held up payment on plaintiffs overdue invoices in an attempt to intimidate and retaliate against her. This caused the plaintiff to suffer financial hardship and duress. Plaintiff claims she repeatedly let Stagliola know that she found his behavior to be offensive, hostile and unwelcome.
On March 31, 1999, Weston filed a charge against the defendants with the Massachusetts Commission Against Discrimination (“MCAD”). Shortly thereafter, the plaintiff alleges that the defendants commenced a series of retaliatory and discriminatory acts against her. Specifically, plaintiff alleges that the defendants refused to timely pay her and that they also delayed the payment of invoices for reimbursement for costs and use of her equipment, invoices which had previously been routinely paid. She also alleges that the defendants unjustifiably altered her work hours, making it more difficult for her to retain and to perform her job. As aresult, plaintiff alleges she suffered severe financial difficulties, anxiety, emotional distress, and loss of enjoyment of life.
On August 7, 2001, plaintiff filed the present action in the Plymouth Superior Court. Subsequently, the defendants, MG&ED, Board, and Stagiola, filed motions for summary judgment and defendant Town filed a motion to dismiss. The motions were heard by this court on January 8, 2002.
DISCUSSION
The Town’s Motion to Dismiss
For purposes of a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), the allegations of fact in the complaint must be treated as true and the plaintiff is entitled to all reasonable inferences. General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). The complaint must be accorded a “generous reading.” New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 29 (1988). Characterizations and conclusions of law, however, warrant no such consideration. Schaer v. Brandeis University, 432 Mass. 474, 477 (2000). A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless “on the face of the complaint it is unmistakable that the plaintiff can prove no facts in support of a tenable legal claim." Disend v. Meadowbrook School, 33 Mass.App.Ct. 674, 676 (1992).
In the Town's motion to dismiss Count I of the plaintiff s complaint, it argues that the plaintiff is not a Town employee but rather an employee of MG&ED and that MG&ED is a separate entity from the Town. While in some respects the Town and MG&ED are separate entities, “MG&ED’s employees are town employees paid through the town treasurer’s office by *326 town-issued checks.” Middleborough v. Middleborough Gas & Electric Department, 422 Mass. 583, 587 (1996). In her complaint, the plaintiff alleges that she is an employee of the Town and, as in Middleborough, that she is paid by a Town check issued by the Town Treasurer from the Town’s general fund. The plaintiff s allegations constitute, at a minimum, the “toehold” needed to survive the Town’s motion to dismiss. See Marr Equipment Corp. v. I.T.O. Corp. of New England, 14 Mass.App.Ct. 231, 235 (1982). Accordingly, this court denies the Town’s motion.
Defendants, MG&ED, Board, and Stagliola’s, Motions for Summary Judgment
The remaining defendants, the MG&ED, the Board and Stagliola, filed motions for summary judgment pursuant to Mass.R.Civ.P. 56 as to Counts II, III and IV of the plaintiffs complaint. In support of their motions, the defendants argue that the plaintiff was not an employee but an independent contractor not subject to protection under G.L.c. 151B, and that the alleged physical contact and touching by Stagliola did not constitute sexual harassment, as it was not sexual in nature. In addition, the MG&ED argues that the plaintiff did not comply with G.L.c. 151BF, because she failed to name it as a party in her MCAD filing.[2] MG&ED also contends that Stagliola was not an agent of MG&ED and, as such, it cannot be held responsible for his actions.
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 232 (1997); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). If the pleadings, depositions, answer to interrogatories and admissions on file, along with the affidavits, if any, demonstrate that there are no genuine issues of material fact, summary judgment is appropriate. Mass.R.Civ.P. 56 (c).
The moving party bears the burden of affirmatively demonstrating that no material facts are in dispute. Tate v. Dept. Mental Health, 419 Mass. 356, 359 (1995). Where, as in this case, the parties moving for summary judgment do not bear the burden of proof at trial, the burden may be met either by submitting affirmative evidence negating an essential element of the opposing party’s case or demonstrating that proof of an essential element is unlikely to be introduced at trial. O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once a moving party establishes the absence of a material factual issue, the party opposing summary judgment may defeat the motion only by responding with admissible evidence establishing the existence of a material factual dispute. O’Brion, Russell & Co. v. LeMay, 370 Mass. 243, 245 (1976).
In deciding a motion for summary judgment, the court should not weigh evidence, assess credibility, or find facts. Riley v. Presnell, 409 Mass. 239, 244(1991); Kelley v. Rossi, 395 Mass. 659, 663 (1985). Summary judgment is disfavored in disputes involving a party’s state of mind, motive or intent. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 439 (1995). Instead, the fact finder should be given the opportunity to observe the demeanor of each witness whose state of mind is at issue, Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991), because it is for the fact finder to believe or disbelieve each witness’s testimony. DeRose v. Putnam Management Co., 398 Mass. 205, 210-11 (1986).
Massachusetts prohibits sexual discrimination in the workplace. G.L.c. 151B, §4(1). Sexual harassment is considered a form of sex discrimination. College-Town Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 162 (1987). Specifically, G.L.c. 151B, §4(16)(A) makes it unlawful “for an employer, personally or through its agents to sexually harass any employee.” Pursuant to G.L.c. 151B, §1(18), “the term ‘sexual harassment’ shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (b) such advances, requests or conduct have the purpose or effect of unreasonably interfermg with an individual’s work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment.” There are two types of sexual harassment claimsquid pro quo claims[3] and hostile environment claims.
Where, as here, there are no allegations that submission to sexual requests was a condition of employment, plaintiff must proceed under the hostile work environment theory. See Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. 673, 677 (1993). Indeed, plaintiff alleges that as a result of Stagliola’s non-consensual and unwelcomed touching, she was subject to the hostile work environment form of sexual harassment. The defendants argue that plaintiff is not entitled to bring an action for sexual harassment under G.L.c. 151B. They claim she was working as an independent contractor, not as an employee, and that the statute does not extend coverage to independent contractors. Therefore, the first issue this court must address is the plaintiffs employment status and whether she is precluded from bringing her claim under G.L.c. 151B.
Under G.L.c. 151B, §1(6), the definition of the term “employee” is made in the negative in that “it does not include any individual employed by his parents, spouse or child, or in the domestic service of any person.” Compare other statutes, such as G.L.c. 152, Sec. 1(4), where the term “employee” is defined more broadly as “every person in the service of another *327 under contract of hire, express or implied, oral or written.” In Comey v. Hill, 387 Mass. 11 (1982), the Supreme Judicial Court held that “in the absence of any indication to the contrary, we will not assume that the Legislature intended to cover relationships outside the traditional common law employer-employee relationship.” Comey v. Hill, 387 Mass. at 15. The Court further held that “[a]lthough the Commonwealth’s employment discrimination law, G.L.c. 151B, affects a ‘broad array of employment practices’ and extensively prohibits discrimination against certain protected classes, we do not read the statute as intending to broaden the definition of employee to include an independent contractor.” Id.
Thus, while it is clear that G.L.c. 151B does not provide protection against sexual discrimination for independent contractors[4] the employment status of plaintiff at the time of the alleged sexual harassment by Stagliola still remains to be determined. Employment status is not determined by labels alone and the defendants’ classification of plaintiff as an independent contractor does not necessarily mean that she is one. Whether an individual is an employee or an independent contractor is usually a question of fact. Thorson v. Mandell, 402 Mass. 744, 747 (1988). While there are no hard and fast criteria set out by statute or regulation, the MCAD and the courts have adopted a functional approach to determine who is an independent contractor. The following factors are generally considered:
Is there a contract for the performance of specified work?
Does the worker operate a distinct business?
Does the worker furnish materials or hire helpers?
Is the job a special assignment rather than an integral part of the employer’s business?
Is the worker paid by the job rather than by the hour?
Does the worker receive benefits?
Does the work require special skill?
Is the work the kind that is normally performed without direction from the employer?
Is the employment temporary or is there an ongoing relationship?
Does the worker have the opportunity to make a profit or sustain a loss?
See Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 674-75 (1st. Cir. 1998); Chase v. Independent Practice Ass’n, Inc., 31 Mass.App.Ct. 661, 665 (1991). The primary test is the purported employer’s right to control the individual’s work. Silvia v. Woodhouse, 356 Mass. 119, 124 (1969). Thus, the more control the employer exercises over the worker and the details of the job, the more likely an employment relationship exists. It is important to note that it is the right to control and not the actual or amount of control that can be a determining factor.
In the present case, the defendants and the plaintiff advance their arguments using factors taken from the above list. The defendants argue that plaintiff has no office on site but works from her own home and that she uses her own equipment, such as a video camera to film the meetings. Additionally, defendants state that plaintiff is free to work for others, in fact, she does work for other town committees, that plaintiff is paid no salary but is paid by invoice at a prescribed rate for the number of hours worked, that plaintiff is issued a 1099 tax form instead of a W-2 form at year end, and that plaintiff receives no employee benefits, i.e., no vacation pay, no sick or personal time, no health benefits and no retirement benefits.
Plaintiff contends that she is not in business on her own and that she has no offices, staff or business licenses. She states that she was paid an hourly wage and received raises along with other Town/MG&ED employees, that the defendants furnished a computer and other equipment with which she performed her work and that defendants reimbursed her expenses for various material and supplies she used in the performance of her work. Plaintiff argues that the defendants exercised direction and control over her, and that they gave her specific instructions on how and when to perform her job assignments. In her affidavit, plaintiff states, “On many occasions I was told that the work that I did had to be done the way the General Manager [of MG&ED], the Chairman of the Board, and the Board wanted it, and that I had to revise it as they directedwhich happened all the time.”
In addition to the 1990 advertisement seeking applications for a part-time clerk, plaintiff also relies upon the “Indemnity Agreement” made between the plaintiff and the defendants on March 10, 1998. Specifically, the agreement was made “among the Middleborough Gas and Electric Department (“the Department”), a municipal Gas and Electric Utility acting by and through its Commissioners, and the undersigned (“Agent”) [plaintiff] with reference to the following facts: The Agent is currently serving as an Employee of the Department and the Department wishes the Agent to continue in such capacity.” In addition, there are numerous other references made throughout the “Indemnity Agreement” referring to the plaintiff as an employee.
This court concludes that genuine issues of material fact exist as to whether plaintiff was an employee or an independent contractor at the time of the alleged sexual harassment and, accordingly, this issue must be decided by a trier of fact.
Assuming, however, that plaintiff Weston was an “employee” at the time of the alleged unlawful conduct, she must still establish a prima facie case of sexual harassment for her claim to survive a summary judgment motion.
*328 To establish a claim for hostile work environment sexual harassment, a plaintiff must be able to demonstrate verbal or physical conduct: 1) of a sexual nature; 2) that is unwelcome; 3) that has the purpose or effect of creating a hostile or humiliating or sexually offensive work environment; and 4) that interferes with the plaintiffs ability to perform his or her job. See CollegeTown Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 162 (1987); Johnson v. Daniels Bros. Auto Sales, Inc., 18 M.D.L.R. 194, 196 (1996).
Plaintiff alleges she was subjected to Stagliola’s persistent and sexually harassing conduct during her employment under his term as Chairman of the Board. She alleges that the exposure to this conduct created a hostile work environment and interfered with her ability to do her job. Defendants argues that the alleged conduct of which the plaintiff complains was neither sufficiently severe nor adequately pervasive to amount to actionable harassment under c. 15IB, and that it was not of a “sexual nature.”
Conduct of a Sexual Nature
According to the plain language of the statute, the alleged harassment must be “sexual in nature.” G.L.c. 151B, §1(18). Courts have determined as a matter of law that particular use of language, even language that is hostile and offensive, is not sufficiently “sexual” under the circumstances. Prader v. Leading Edge Products, Inc., 39 Mass.App.Ct. 616, 619 (1996); see also Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. at 673. However, it is more difficult, under the facts of this case, where the alleged harassment is wholly physical in nature but does not involve the touching of breasts, buttocks or genitals, to determine as a matter of law that the nonconsensual and unwelcomed touching by Stagliola was not sufficiently sexual in nature to be actionable.
While the conduct at issue generally must be of a sexual nature, the conduct need not be explicitly “sexual in nature.” Morehouse v. Berkshire Gas Co. , 989 F.Sup. 54, 62 (D.Mass. 1997). Conduct that is sexist and treats women in a humiliating manner can be sexual harassment. See Quick v. Donaldson Co., 90 F.3d 1372, 1377 (8th Cir. 1996). In Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998), the United States Supreme Court made clear that sexual harassment need not be motivated by sexual desire to be actionable. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. at 79; Melynchenko v. 84 Lumber Co., 424 Mass. 285, 286 (1997) (finding individual liable under G.L.c. 151B for vulgar joking despite the fact that conduct was not sexually motivated); see also Barrett v. Omaha National Bank, 584 F.Sup. 22 (D.Neb. 1983) (where the court did not characterize the actions of a co-worker as sexual advances, but where the court found that the conduct of the coworker including nonconsensual touching of his co-employee amounted to verbal or physical conduct of a sexual nature which had the effect of creating an intimidating, hostile, and offensive working environment). Here, whether or not the conduct directed at the plaintiff was sexually motivated, a reasonable woman could have believed she was humiliated and victimized in these incidents because of her sex. See Gnerre v. MCAD, 402 Mass. at 507 ("[W]e view the evidence of harassment from the view of a reasonable person in the plaintiffs position”). Plaintiff claims that Stagliola did not touch, strike or poke males on the thigh, knee, leg, ankle, arm and shoulder as he repeatedly touched the plaintiff during the Board meetings. Nor did he look over the bodies of males in the same “extremely uncomfortable manner in which he often leered at the plaintiffs body.” Further, plaintiff claims that on each of the occasions that Stagliola touched, struck, or poked her on her thigh, knee, leg (“with his hand directly on my nylons”), she was wearing a skirt or a dress. Under all of these circumstances, it is for the jury to decide whether the alleged conduct was of a sexual nature.
Conduct That Is Unwelcome
The “gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome.” Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1377 (8th Cir. 1996), quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 68 (1986). Harassing conduct is considered unwelcome if it was “uninvited and offensive.” Id. at 1378, quoting Burns v. McGregor Electronic Industries, Inc., 989 F.2d 959, 962 (8th Cir. 1993). The question of whether a particular conduct was unwelcome will turn largely on credibility determinations by the trier of fact. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. at 68. The proper inquiry is whether the plaintiff indicated by her conduct that the alleged harassment .was unwelcome. Id. In the present case, plaintiff states that she repeatedly let Stagliola know that she found his conduct to be offensive, hostile and unwelcome. Plaintiff gave Stagliola disapproving looks, looked away from him and avoided his gaze, tried to move her seat away from him, changed her attire, ignored him and tried to keep away from him. Simply because a plaintiff submits to conduct in order to not lose her job does not show that she welcomed the conduct. Id.
Hostile Environment That Interferes With Plaintiffs Ability to Perform Job
“A hostile work environment occurs where the offensive conduct is so pervasive as to alter the conditions of the [plaintiffs] employment, so as to create a barrier to the [plaintiffs] full and untrammeled participation in the workplace.” College-Town Div. of Interco, Inc. v. MCAD, 400 Mass. at 162. In order to be actionable, “the claimed conduct must be both objectively and subjectively offensive.” Messina v. Araserve, Inc., 906 F.Sup. 34, 36 (D.Mass. 1995), citing Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass, at 678. A court must consider “whether, in the totality of the circumstances, the alleged conduct is sufficiently severe and pervasive to ‘interfere with a hypothetical reasonable person’s work performance.’ ” Id., quoting *329 Lewis v. Gillette, 1993 WL 291771 (D.Mass. 1993), affirmed by Lewis v. Gillette, 22 F.3d 22 (1st Cir. 1993); see Gnerre v. MCAD, 402 Mass. at 507-08 (in evaluating a hostile work environment claim, the court will examine whether, from the point of view of a reasonable person in plaintiffs position, the alleged misconduct was sufficiently pervasive to alter the conditions of her employment). As the defendants correctly argue, the law does not serve “as a vehicle for vindicating the petty slights suffered by the hypersensitive.” Zabkowitz v. West Bend Co., 589 F.Sup. 780, 784 (D.Wis. 1984).
In determining whether summary judgment is warranted, the court must look at all circumstances including such factors as: 1) the frequency of the conduct complained of, Melynchenko v. 84 Lumber Co., 424 Mass. at 287 (sexual harassment that occurred on a near-daily basis actionable); 2) the tenor and intensity of any degrading language used, Gnerre v. MCAD, 402 Mass. at 503 (repeated sexual overtures, such as “I got a big sausage, you want?” actionable); 3) the presence or absence of any physical contact or intimidation, Melynchenko v. 84 Lumber Co., 424 Mass. at 287 (grabbing of genitals and buttocks actionable); and 4) the overall atmosphere of the particular workplace, Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. at 676-78 (given lighthearted atmosphere, sexual banter not actionable).
It appears that the Supreme Judicial Court imposes no quantitative requirements on the number of incidents necessary to constitute a claim of sexual harassment in the workplace. Gnerre v. MCAD, 402 Mass. at 507-08. However, a single episode of harassment, if its effects are profound, may constitute actionable sex discrimination. See Bowman v. Heller, 1993 WL 761159, 1 Mass. L. Rptr. 51 (Mass. Super. Ct. July 9, 1993) (Flannery, J.).. Here, plaintiff complains that on a number of occasions Stagliola sexually harassed her. As a result of his conduct, plaintiff alleges that she suffered extreme and severe emotional pain and psychological distress. Plaintiff claims that her self-confidence was undermined, that she was constantly on edge and had difficulty concentrating at work. Viewed from the perspective of a reasonable person in the plaintiffs position, the plaintiff has produced sufficient evidence to demonstrate that Stagliola’s alleged misconduct was sufficiently pervasive to alter the conditions of her employment. Again, on the facts alleged here, it is for a jury to decide whether there was a hostile environment that interfered with the plaintiffs job performance.
MG&ED Control Over Board Members
In addition to the arguments advanced above, MG&ED also argues that it has no control over Board members and that Stagliola was not acting as its agent when the alleged sexual harassment occurred.
The Court in College-Town Div. of Interco, Inc. v. MCAD, explained that “General Laws c. 15 IB, §4, prohibits discrimination by ‘an employer, by himself or his agent.’ Furthermore, G.L.c. 151B, §9, provides that ‘[t]he provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof . . .’ ” College-Town Div. of Interco, Inc. v. MCAD, 400 Mass. at 165.
Massachusetts holds employers unconditionally liable for sexual harassment by their supervisors, but limits such strict liability to situations where the supervisor/alleged harasser exercises “supervising authority” over the plaintiff. Messina v. Araserve, Inc., 906 F.Sup. 34, 37 (D.Mass. 1997); see also College-Town Div. of Interco, Inc. v. MCAD, 400 Mass. 156 (1987) (SJC held an employer strictly liable for the hostile work environment created by supervisory personnel, in direct contrast to Title VII precedent holding the employer liable only if liability was grounded in traditional agency principles).[5] In College-Town, the Court stated that “the Legislature intended that an employer be liable for discrimination committed by those on whom it confers authority without an additional notice requirement.” College-Town Div. of Interco, Inc. v. MCAD, 400 Mass. at 164-65 n.5.
Thus, for MG&ED to be held liable for the conduct of Stagliola, plaintiff must demonstrate that Stagliola was acting as its agent and that he was acting in a supervisory capacity over the plaintiff. Here, there is no dispute that Stagliola acted as plaintiff s supervisor in her position as secretary to the Board. MG&ED, however, contends that Stagliola has never been employed by or held a position with MG&ED. In fact, MG&ED states that pursuant to G.L.c. 164, §§55 and 56, it has no control over members of the Board who are elected in town-wide elections and that it is the Board that oversees the operation of the MG&ED. While the Board does exercise direction and control over the MG&ED plant manager with regard to the operation of the plant, the Board does not have the power to hire agents, servants, or attorneys, a power expressly vested in the manager alone.[6] See Golubek v. Westfield Gas & Electric Light Board, 32 Mass.App.Ct. 954, 955 (1992). Indeed, as to the 1990 advertisement seeking applications for a part-time clerk/ secretary, it was the MG&ED that was accepting applications on behalf of the Board and all applications were directed to the attention of the MG&ED General Manager’s secretary. This advertisement, in conjunction with the “Indemnity Agreement” drafted by the MG&ED which purports to make an agreement “among the Middleborough Gas and Electric Department (“the Department”), a municipal Gas and Electric Utility acting by and through its Commissioners, and the undersigned (“Agent”). . .,” raises a genuine issue of material fact as to the agency relationship between MG&ED and the Board. It is undisputed that Stagliola is an agent of the Board and therefore, by implication, a genuine issue of material fact also exists as to the agency relationship between the MG&ED and Stagliola. Accordingly, summary judgment in favor of MG&ED is not appropriate.
*330 Retaliation
In her complaint, the plaintiff claims that the MG&ED, the Board and Stagliola retaliated against her. A retaliation claim must allege that the retaliatory conduct was due to the plaintiff s opposition to practices forbidden under G.L.c. 151B. LaRosa v. United Parcel Service, Inc., 23 F.Sup. 2d 136, 151-52 (D.Mass. 1998). Here, plaintiff alleges the defendants retaliated against her for filing this sexual discrimination action at the MCAD. She claims defendants refused to pay her on a timely basis and also that they delayed payments to her for reimbursements for her expenses. Additionally, she contends that defendants unjustifiably altered her work hours making it difficult for her to retain and perform her job.
The Supreme Judicial Court has emphatically rejected claims that someone acted “coldly” or that someone’s “ “body language’ betokened hostility,” and hold that such conduct does not rise to the level of unlawful retaliation. Instead, the Court stressed that these types of “subjective and intangible impressions” have “no place” in determining a violation of G.L.c. 151B. Bain v. City of Springfield, 424 Mass. 758, 765-66 (1997). Plaintiffs claims of retaliation are more substantive and less subjective than those routinely rejected by the Supreme Judicial Court. Whether they rise to the level of illegal retaliation is a question of fact to be determined at trial. MacCormack v. Boston Edison Co., 423 Mass. 652, 659 (1996) (“The presence of retaliation is largely a factual matter and a jury determination must be upheld if any evidence anywhere in the record supports it”); cf. Poirier v. Plymouth, 374 Mass. 201, 212 (1978).
Conclusion
The determination of hostile work environment sexual harassment must be made on a case-by-case basis. In this case, material issues of fact still exist as to whether the plaintiff was subjected to such an environment. While any one of the incidents that plaintiff complains about, considered alone, might seem insufficiently serious to establish a claim, Stagliola’s alleged behavior must be viewed in the context of his entire course of conduct toward the plaintiff. Viewed in its entirety, this court holds that at this stage the plaintiff has presented sufficient evidence that Stagliola’s alleged unwanted and unwelcomed touching was of a sexual nature and of significant impact such that it could have offended a reasonable woman in the plaintiffs situation. Additionally, plaintiff has sufficiently demonstrated that the work environment to which she was allegedly subjected interfered with her full participation in the workplace. Whether Stagliola’s conduct rose to the level of sexual harassment as proscribed by G.L.c. 15 IB is a question of fact to be determined at trial.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Town’s motion to dismiss Count I of the plaintiffs complaint be DENIED. It is further ORDERED that defendant MG&ED’s motion for summary judgment as to Count II of the plaintiffs complaint be DENIED, that defendant Board’s motion for summary judgment as to Count III of the plaintiffs complaint be DENIED, and that defendant Stagliola’s motion for summary judgment as to Count IV of the plaintiffs complaint be DENIED.

 In the plaintiffs’ first filing with the MCAD, she named the Board, the Town and Stagliola. In her second filing with the MCAD, she named the Board and the Town. While it is preferable to name a party in the initial MCAD filing, failure to do so is not necessarily fatal to later bringing a claim against that party in Superior Court. Sexual harassment claims can be brought against parties who were not previously named at the MCAD, as long as their conduct was put at issue in the MCAD charge, they had notice of the charge, and they had an opportunity to participate in the defense and conciliation of the charge. Chatman v. Gentle Dental Ctr. of Waltham, 973 F.Sup. 228, 234-35 (D.Mass. 1997); LeClerc v. Interstate Distrib., Inc., No. 97-2008, slip op. at 7-8, 8 Mass. L. Rptr. 654 (Mass. Super. Feb. 11, 1998) (Graham, J.); Smiley v. Acme Wholesale, Inc., 7 Mass. L. Rpt. No. 24, 549 (Mass. Super. Jan. 5, 1998) (allowed corporate officer and part owner not named at the MCAD to be sued in civil action). Similarly, in the present case, this court does not find plaintiffs failure to name MG&ED in the original filing at MCAD fatal to her now pursuing a claim against it in the Superior Court. There is a sufficient nexus between MG&ED and the Board to satisfy the court that the above-mentioned requirements have been met. MG&ED hired an investigator to investigate plaintiffs claims at the MCAD. Additionally, it is noted that the two entities are currently represented by the same counsel.

 To prove a claim for quid pro quo sexual harassment, the plaintiff must demonstrate: 1) that the alleged harasser made sexual advances, sexual requests or engaged in conduct of a sexual nature; 2) that he or she rejected or submitted to such advances, requests or conduct; and 3) that the “submission to or rejection of such [sexual] advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions.” See G.L.c. 151B, §1(18); Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783-84 (1st Cir. 1990).

 It is noted that the sexual harassment statute, G.L.c. 214, §1C, does not create a cause of action for independent contractors. Vicarelli v. Business Int’l, Inc., 973 F.Sup. 241, 243-46 (D.Mass. 1997).

 While “Massachusetts courts often look to” interpretations by federal courts of analogous federal laws, they are not bound to follow such interpretations in analyzing Chapter 151B. Smith v. Mitre Corp., 949 F.Sup. 943, 946 (D.Mass. 1997); Melnychenko v. 84 Lumber, 424 Mass. at 288-89; Labonte v. Hutchins & Wheeler, 424 Mass. 813, 816 n. 5 (1997).

 ‘The relationship between the manager and the board has been characterized in these words: ‘[T]he management and operation of the plant is in the board ... by virtue of G.L.c. 164, §56.’ Commonwealth v. Oliver, 342 Mass. 82, 85 (1961). By reason of that subordinate relationship, the board ‘could frame such general regulations concerning the exercise by . . . [the manager] of his statutory powers as were found to be reasonably required, and as did not violate the statute.’ Capron v. Taunton, 196 Mass. 41, 44 (1907). Among the statutory powers of the manager is the hiring of all employees . . . See ibid. and G.L.c. 164, §56." Golubek v. Westfield Gas & Electric Light Board, 32 Mass.App.Ct. 954, 955 (1992).