NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-459                                          Appeals Court

   MASSASOIT INDUSTRIAL CORPORATION  vs.  MASSACHUSETTS COMMISSION
                 AGAINST DISCRIMINATION & another.[1]


                           No. 16-P-459.

      Plymouth.      December 7, 2016. - March 23, 2017.

          Present:  Cypher, Maldonado, & Blake, JJ.


Handicapped Persons.  Anti-Discrimination Law, Handicap, Age,
     Employment, Termination of employment.  Employment,
     Discrimination, Termination.  Massachusetts Commission
     Against Discrimination.  Emotional Distress.  Damages,
     Emotional distress.  Words, "Handicap."


     Civil action commenced in the Superior Court Department on
July 2, 2014.

     The case was heard by Thomas F. McGuire, Jr., J., on
motions for judgment on the pleadings.


     Susanne Hafer for the plaintiff.
     Wendy A. Cassidy for Massachusetts Commission Against
Discrimination.
     Christopher Maffucci, for the intervener, was present but
did not argue.


     BLAKE, J.  The plaintiff, Massasoit Industrial Corporation

(Massasoit), appeals from a judgment of the Superior Court

---

     [1] William J. Glynn, intervener.

denying its challenge to the decision and final order of the Massachusetts Commission Against Discrimination (MCAD). The MCAD decision affirmed a hearing officer's order, arising from her finding that Massasoit had terminated the employment of William J. Glynn in violation of the handicap and age discrimination provisions of G. L. c. 151B. We affirm.

Background. In 1986, Massasoit hired Glynn as a part-time custodian in its outside maintenance department. At the time, Glynn was fifty-four years old. For the ten years prior to his termination, he performed general custodial work at the registry of motor vehicles (RMV) in Brockton to the satisfaction of his supervisors. He had a spotless personnel record with Massasoit, and had never called in sick or missed work due to illness.

On March 30, 2007, Glynn left work early because he was not feeling well. Glynn's son took him to the hospital, where he stayed for three days to treat pneumonia. Glynn asked his daughter-in-law to notify his coworker of his absence from work due to his illness, which she did on the next day Glynn was scheduled to work. The coworker assured her that he would notify their supervisor. On April 6, 2007, less than one week after being discharged from the hospital, Glynn was readmitted with chest pains and diagnosed with a heart attack. The daughter-in-law again notified the coworker of Glynn's situation, and he assured her that he would notify their

supervisor.  He also visited Glynn and assured him that the supervisor had been notified.

From April 5, 2007, through June 1, 2007, Massasoit assigned another employee to cover Glynn's duties.  On May 7, 2007, Glynn attempted to return to work with a doctor's note clearing him to work without restrictions, at which point Massasoit's maintenance facility manager informed him that he had been fired and replaced because he was a "no call/no show." Glynn's further attempts to be reinstated also were unsuccessful.  At the time of his termination, at seventy-four years old, Glynn was the oldest person working in the outside maintenance department.  On June 1, 2007, Massasoit hired a woman, aged sixty-eight, to replace Glynn.

Procedural history.  On June 22, 2007, Glynn filed a complaint with the MCAD, in which he alleged that Massasoit had discriminated against him on the basis of age and disability, in violation of G. L. c. 151B, § 4.  Following a public hearing in May, 2010, a hearing officer issued a comprehensive decision in favor of Glynn, finding that Massasoit had terminated his employment "based on a combination of concerns about his age and his health."  She awarded Glynn $55,650 in lost income and $35,000 in damages for emotional distress.[2]  Massasoit then

---

[2] Massasoit also was ordered to cease and desist from engaging in discrimination based on age and handicap, and was

sought review by the full commission, which upheld the hearing officer's decision and awarded Glynn in excess of $51,000 in attorney's fees and costs.[3]

On July 2, 2014, Massasoit commenced an action in Superior Court seeking review pursuant to G. L. c. 30A, § 14, and G. L. c. 151B, § 6. Acting on cross motions for judgment on the pleadings, the judge upheld the MCAD's decision, concluding that it was supported by substantial evidence and free from any error of law. This appeal followed.

Standard of review. A decision of the MCAD should be affirmed unless the hearing officer's findings and conclusions are unsupported by substantial evidence or are based on an error of law. Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. 673, 676 (1993). See G. L. c. 30A, § 14(7); G. L. c. 151B, § 6. Deference should be given to the hearing officer's fact-finding role, including her right to draw reasonable inferences from the facts found. Smith College v. Massachusetts Commn. Against Discrimination, 376 Mass. 221, 224 (1978). Credibility determinations are solely for the hearing officer to make, and will not be disturbed on appeal. Ramsdell, supra.

---

required to conduct two training sessions for its supervisory staff.

[3] The full commission also reduced the lost wages award by $1,000 due to a calculation error. The reduction is not disputed on appeal.

Discussion. 1. Age discrimination. A prima facie case of discrimination requires an employee to demonstrate that "(1) he . . . is a member of a class protected by G. L. c. 151B; (2) he . . . performed his . . . job at an acceptable level; [and] (3) he . . . was terminated." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 681 (2016), quoting from Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 441 (1995). Once the employee establishes a prima facie case, the employer must articulate a legitimate reason for terminating the employee's employment. Bulwer, supra. The employee must then demonstrate that the reason offered by the employer was merely a pretext, masking the real reason, discriminatory intent. Ibid.

While the hearing officer here did not find a widespread pattern of hostile age animus at Massasoit, such a finding was not necessary, as pretext may be proven in a number of ways. Bulwer, supra at 681-683. Glynn established a prima facie case of age discrimination. At the time of his firing, Glynn, the oldest employee in the outside maintenance department, was replaced by a woman six years his junior. This disparity in ages was sufficient to establish a prime facie case of discrimination. See Knight v. Avon Prods., Inc., 438 Mass. 413, 425 (2003) (replacement by employee who is five years younger or

more is, alone, sufficient to meet prime facie case).[4] Notably, the hearing officer found that while Massasoit employed older individuals, it drew the line at someone in his mid-seventies who was confronting sequential health issues. She also found, based on her credibility determinations of the conflicting testimony presented, that the reason given by Massasoit for the termination -- no call/no show -- was a pretext. See Lipchitz v. Raytheon Co., 434 Mass. 493, 499-504 (2001). This is particularly notable with respect to the haste with which Massasoit acted in terminating Glynn and the lack of an interactive process. The hearing officer credited the testimony of Glynn's daughter-in-law that she personally visited the work site after both the initial hospitalization and the second hospitalization, told a coworker that Glynn had pneumonia, and later a heart attack, and that the coworker promised to tell Glynn's supervisor. The hearing officer also found that the

---

[4] We note that Bulwer, supra, does not say that an employee in a discharge case must show that the position remained open or that the employer sought to fill the position with a person with similar qualifications. Previous precedent included such a showing as an element of the prima facie case in discrimination actions. See Dartt v. Browning-Ferris Indus., Inc., 427 Mass. 1, 3 (1998); Knight v. Avon Prods., Inc., 438 Mass. 413, 420-421 (2003). Cf. Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 41-42 (2005) (modifying prime facie case in reduction in force cases). The distinction is not material to the outcome in this case, because it is undisputed that Glynn was replaced by a younger individual.

information was transmitted, and that testimony to the contrary was not credible.  There was no error.

2.  Handicap discrimination.  As with age discrimination, a claim for handicap discrimination follows the same burden shifting framework outlined above.  See Bulwer, supra.  "[T]o establish a prima facie case of unlawful employment discrimination on the basis of handicap under G. L. c. 151B, § 4(16), [an employee] must present credible evidence that (1) he is handicapped within the meaning of the statute; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodation; (3) he was terminated or otherwise subject to an adverse action by his employer; and (4) the position he had occupied remained open and the employer sought to fill it."  Dartt v. Browning-Ferris Indus., Inc., 427 Mass. 1, 3 (1998).  See Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 449 (2002).[5]

The specific issue presented here is whether Glynn was handicapped within the meaning of the statute.  General Laws c. 151B, § 1(17), as amended by St. 1989, c. 722, § 11, defines "handicap" as "(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment."  The hearing officer found

_____

[5] But see note 4, supra.

that Glynn was hospitalized for pneumonia and a heart attack and was fired shortly thereafter despite being cleared to return to work. On these facts, she found that Glynn had set forth a prima facie case of discrimination on the basis of a prior record of impairment, and of being regarded as having such an impairment.

Massasoit claims that Glynn failed to prove that his handicap limited a major life activity, as required under G. L. c. 151B, § 1(17). Implicit in the hearing officer's findings, and apparent in the record, is the fact that Glynn's impairments, during their duration, limited the major life activity of working, see G. L. c. 151B, § 1(20), in that he was unable to perform any work at all. See New Bedford v. Massachusetts Commn. Against Discrimination, 440 Mass. 450, 464 (2003) (relying on MCAD guidelines defining disability to mean "[a]n impairment [that] substantially limits an individual's ability to work if it prevents or significantly restricts the individual from performing a class of jobs or a broad range of jobs in various classes" [emphasis in original]); Ocean Spray Cranberries, Inc. v. Massachusetts Commn. Against Discrimination, 441 Mass. 632, 639 (2004).

We need not decide whether or to what extent Glynn's condition was temporary since "[n]ot every temporary disability is short lived," see Dartt, supra at 17, and the hearing officer

did not rest her decision on the ground that Glynn was in fact disabled. The evidence was more than sufficient to demonstrate that Glynn was regarded as having an impairment, as the hearing officer found. See Dahill v. Police Dept. of Boston, 434 Mass. 233, 241 (2001); Talbert Trading Co. v. Massachusetts Commn. Against Discrimination, 37 Mass. App. Ct. 56, 61 (1994) (employee with known heart condition was perceived by employer to be handicapped), overruled on other grounds by New Bedford, supra at 462 n.25.[6] In this context, Massasoit's argument that

---

[6] We note that since the decisions in New Bedford, supra, and Hallgren v. Integrated Financial Corp., 42 Mass. App. Ct. 686, 688 (1997), upon which Massasoit relies, the Supreme Judicial Court has rejected the argument that temporary disabilities are unprotected as a matter of law, see Dartt, supra at 16-17, and the Americans with Disabilities Act (ADA) has been amended, effective January 1, 2009, to broaden the definition of disability to include temporary disabilities, and to broaden the definition of "substantially limits." See ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (ADAAA or amended Act). Both Hallgren and New Bedford relied for their reasoning on the now superseded provisions of the ADA. The amended Act abrogated Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 199 (2002) (upon which Massasoit also relies), in which the United States Supreme Court suggested that a temporary impairment could not be a disability under the ADA, and that an impairment, to be substantially limiting, must encompass a broad range of jobs. The amended Act provides that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms," see 42 U.S.C. § 12102(4)(A) (2012), and directed the Equal Employment Opportunity Commission to revise its regulations. See 29 C.F.R. § 1630.2(j)(1)(iii) (2013) ("The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an

Glynn was required to show that he had a disability that substantially limited a major life activity turns the "regarded as" prong on its head.  The hearing officer found that Massasoit perceived Glynn to be substantially limited in a major life activity, and acted (improperly) on that perception.  The MCAD's guidelines, to which we give substantial deference, see Dahill, supra at 239, specifically provide that "[a]n individual is considered to be 'handicapped,' even if s/he has no physical or mental impairment that substantially limits one or more major life activities, if the individual is regarded as having such an impairment.  For example, a person who has high blood pressure

---

impairment 'substantially limits' a major life activity should not demand extensive analysis"); 29 C.F.R. § 1630.2(j)(1)(ix) Appendix (impairment lasting less than six months can constitute disability under ADA, if it is "sufficiently severe").  See Summers v. Altarum Inst., Corp., 740 F.3d 325, 329-300 (4th Cir. 2014) (discussing legislative history).

The Federal courts have declined to apply the ADAAA to causes of action arising before its effective date.  See Rhodes v. Langston Univ., 462 F. Appx. 773, 776-777 (10th Cir. 2011); Reynolds v. American Natl. Red Cross, 701 F.3d 143, 151-152 (4th Cir. 2012) (and cases cited).  Massachusetts looks to Federal law to interpret the definition of disability under G. L. c. 151B, except in those situations in which the Supreme Judicial Court expressly departs from it.  Dahill, supra at 243. In that sense, the effective date of the ADAAA is not binding on our decisions under Massachusetts law, and we are free to look to the ADAAA even in this case for purposes of interpreting similar language in c. 151B.  While we believe that these broad changes in Federal law would be considered material to the Supreme Judicial Court's current interpretation of the statute, we need not resolve the question ourselves, because the judgment may be affirmed even under the law (State and Federal) as it existed before the ADAAA.  See infra.

. . . might have no functional impairments, but may be 'handicapped' if their employer regards such condition as a health risk."  MCAD:  Employment Discrimination on the Basis of Handicap -- Chapter 151B Guidelines (MCAD Guidelines) § II.A.4 (1998).  "Chronic or episodic disorders that are substantially limiting may be handicaps."  MCAD Guidelines § II.A.6.  See New Bedford, 440 Mass. at 462-463.  Cf. Katz v. City Metal Co., 87 F.3d 26, 33 (1st Cir. 1996) (employee fired shortly after heart attack; fact finder was entitled to make its "own judgment as to what the employer may have perceived, rightly or wrongly, about [the employee's] condition. . . . [B]oth the language and policy of the [ADA] seem to us to offer protection as well to one who is not substantially disabled or even disabled at all but is wrongly perceived to be so").

Having already found that Massasoit's stated legitimate nondiscriminatory reason was a pretext, the hearing officer permissibly concluded that Massasoit was motivated by discriminatory animus and that the animus had resulted in his termination based on unlawful handicap discrimination.  See Lipchitz, 434 Mass. at 501-507; Bulwer, 473 Mass. at 681-682.  Again, there was no error.[7]

---

[7] Massasoit asserts that Glynn did not sufficiently allege that he either had a record of a handicap or was regarded as having a handicap within the meaning of G. L. c. 151B, § 1(17), and that the hearing officer could not rely on these theories

3.  Emotional distress damages.  "Emotional distress damage awards, when made, should be fair and reasonable, and proportionate to the distress suffered."  Stonehill College v. Massachusetts Commn. Against Discrimination, 441 Mass. 549, 576 (2004) (concerning emotional distress damages arising out of violations of G. L. c. 151B).  A successful claim requires "a sufficient causal connection between the respondent's unlawful act and the complainant's emotional distress."  Ibid.  "Factors [to] be considered include (1) the nature and character of the alleged harm; (2) the severity of the harm; (3) the length of time the complainant has suffered and reasonably expects to suffer; and (4) whether the complainant has attempted to mitigate the harm."  Ibid.

The hearing officer found that Glynn's work at Massasoit was his whole life; and that after being terminated, he suffered from anxiety and diminished self-esteem.  Glynn felt lost and disappointed.  The hearing officer found that Glynn's demeanor while testifying conveyed the depth of his emotional distress in a compelling and credible manner.  These findings are supported

---

because they were waived.  We reject the claim as a hypertechnical view of Glynn's MCAD complaint, which stated that he had been discharged because of his heart condition.  The Legislature intended G. L. c. 151B to be construed broadly to effectuate its purposes and to cover a wide range of people with mental and physical impairments.  Dahill, 434 Mass. at 240-241. Glynn's MCAD complaint placed Massasoit on notice of his claims. See Pelletier v. Somerset, 458 Mass. 504, 514 (2010).

by the record.  Expert testimony was not required, and the hearing officer was permitted to both credit the testimony and evaluate the nature of the emotional injury inflicted.  See ibid.  Thus, as the hearing officer found, the emotional distress damage award is proportionate to the injury suffered, and supported by substantial evidence.

Judgment affirmed.