Hinkle, J.
In her amended complaint, plaintiff, who has been a Massachusetts State Police Trooper since October of 1994, alleges sex discrimination under G.L.c. 151B against all defendants (Count I). Plaintiff also alleges intentional interference with advantageous relations (Count II) and intentional infliction of emotional distress (Count III) against defendants William Fogarty and Ronald Gray.[1]
This matter is now before the court on two motions for summary judgment, one from the Massachusetts State Police and the other from the individual defendants. After a hearing and review of the pleadings and affidavits, the summary judgment motions are DENIED.
BACKGROUND
The following relevant facts are from the summary judgment record. The undisputed facts, and any disputed facts viewed in the light most favorable to the non-moving party, follow.
Plaintiff Carolyn White became a trooper with the Massachusetts State Police (“the State Police”) in October of 1994. Defendant Fogarty (“Lt. Fogarty”) joined the State Police in 1972, serving as the station commander of the Brookfield barracks from October of 1995 until 2000. Lt. Fogarty had supervisory responsibility over plaintiff between May of 1996 to November of 1997. Defendant Gray (“Major Gray”) joined the State Police in 1992 and was promoted to Major of H *271 Troop in August of 1999, at which time he had supervisory responsibility over plaintiff.
Between October of 1995 and May of 1996, while plaintiff was stationed at the State House barracks, she consistently saw Playboy magazines at the front desk of the area occupied by the State Police, seven or eight times over a three-month period in the ladies room, and once in a desk drawer at another patrolled location. A personnel order relating to undergarments was placed in plaintiffs mailbox, after which she complained to the Sexual Harassment Unit of the State Police in November of 1995.
In May of 1996, plaintiff was transferred to the Brookfield barracks where Lt. Fogarty became her supervisor. At this time, of the 30 troopers stationed at the location, two were female. A pink triangle was left in plaintiffs mailbox, which she understood to be a lesbian symbol. Plaintiff believed Trooper John Vann had put the triangle in her mailbox. Plaintiff filed a complaint with the Sexual Harassment Unit of the State Police about the incident. After an investigation, a Trooper McGowan[2] told plaintiff that he had placed the item in her mailbox and apologized for his actions. Plaintiff then asked the Sexual Harassment Unit to end its inquiry.
When plaintiff came to the Brookfield barracks, she observed a senior trooper, Robert Benoit, harassing a female trooper, Pamela Magill, without effective remedial action by Lt. Fogarty. Trooper Benoit referred to women as “bimbos” and “troopettes.” Dep. Magill 29 (Feb. 11, 2003). Lt. Fogarty was advised of Trooper Benoit’s behavior from Trooper Magill and union representative Kevin O’Grady, but Lt. Fogarty took no disciplinary action against Trooper Benoit.
On one occasion, Kevin Packard, a male trooper under Lt. Fogarty’s command, discharged his weapon into a package that had been retrieved from a suspect’s vehicle, which violated rules and regulations. Lt. Fogarty did not report Trooper Packard for the infraction or otherwise discipline him because Lt. Fogarty “didn’t want him to get in trouble.” Dep. Fogarty 36-37 (Dec. 2, 2002). While plaintiff was under Lt. Fogarty’s command, he reported her to a higher command for alleged infractions such as late arrival, untimely reports and damage to her cruiser windshield. When Lt. Fogarty thought plaintiff was late to work on one occasion, he made her work uncompensated overtime. On occasion, when male troopers were late, Lt. Fogarty did not discipline them. In November of 1996, Lt. Fogarty required plaintiff to undergo re-training through a work improvement plan. Lt. Fogarty had not used this re-training procedure for any other trooper under his command.
On January 9, 1997, one Richard Cabozzi led police on a chase which ended in a collision, after which Trooper Timothy Dowd and Major Gray were involved in a fight with Cabozzi. Plaintiff saw the struggle and a handgun on the ground near Cabozzi. When plaintiff attempted to pick up the gun, she lost her balance and hit her hand on the ground. When plaintiff approached Cabozzi, he started towards her, appearing to plaintiff as though he were going to spit on her. With her palm, plaintiff pushed Cabozzi in the head. At the scene, Major Gray congratulated plaintiff on her performance. Cabozzi showed no signs of injury after his arrest and made no complaint at the police station.
On January 28, 1997, Major Gray submitted a report to Lt. Fogarty stating that plaintiff had struck Cabozzi three times without justification, which plaintiff denies occurred. Before submitting this report Major Gray had been told by Lt. Fogarty that plaintiff was a “problematic” state trooper. Dep. Gray 81 (Dec. 13, 2002). Before reporting her to internal affairs, Major Gray did not speak to plaintiff to question her about the incident. Major Gray could have taken a range of actions with plaintiff, including counseling her or giving her a pass.
When Major Gray saw male police officers on prior occasions use inappropriate force after an arrest, he did not intervene or report them. At the time of the incident, Major Gray believed that plaintiffs conduct did not “warrant an arrest.” Dep. Gray 69. On November 6, 1997, on application of the State Police, a criminal complaint for assault and batteiy was filed against plaintiff, and she was placed on restricted duty. Plaintiff was thereafter tried on the assault and batteiy charge. At her trial, no witness corroborated Major Gray’s testimony that plaintiff struck Cabozzi three blows to his face. The juiy acquitted plaintiff on October 3, 1998.
In October of 1997, plaintiff applied for a hardship transfer to be near her father who was dying of cancer. When Lt. Fogarty was told that plaintiffs request had been granted, he became upset and placed a telephone call. Plaintiff was later told that her request had been denied. In 10 years as union representative, Kevin O’Grady had not seen a request for a hardship transfer denied except for that of plaintiff. According to O’Grady, male troopers at the Brookfield barracks were granted hardship transfers under similar circumstances.
Plaintiff was transferred to the communications section of H Troop in November of 1997 after being placed on restrictive duty. The communications section of H Troop was located in Boston. The section received and transmitted calls and was otherwise responsible for all communications between barracks and cruisers. The room housing the communications section was about 50 feet by 30 feet in dimensions. In early 1998, while she was stationed at H Troop, plaintiff was watching a Martha Stewart cooking show with Trooper Ashe, who was her acting supervisor. During the show, Trooper Ashe commented to plaintiff that he could not watch the show because it was too “sensual.” Dep. White 351 (Aug. 21, 2002). Trooper Ashe also said that any woman who could cook like that had to *272 be a great or good lover. Around Valentine’s Day, Trooper Ashe wanted to watch a television talk show featuring love and sex. Plaintiff said that she did not want to watch the show, and while Trooper Ashe was on the telephone, turned the channel. Trooper Ashe got upset, told plaintiff not to change the channel again without asking him and called plaintiff a “prude.” Dep. White 353.
In October of 1998, plaintiff was returned to full duly and assigned to barracks H-4 in the H Troop. Major Gray became plaintiffs supervisor starting in August of 1999. In September of 1999, plaintiff was on desk duly when she became aware that Trooper Ashe, against whom she had previously lodged a sex discrimination complaint with the MCAD, was transporting a prisoner to the barracks. The Lieutenant on duty, Joseph Hanley, received a call from Lt. Mackala that plaintiff had called him and was agitated and yelling. Lt. Hanley found plaintiff visibly upset, agitated and cursing loudly about the situation. Lt. Hanley intervened, took the prisoner himself to a cell, and then returned to speak with plaintiff about the situation. When Lt. Hanley discovered that plaintiff had left the area, he sought out plaintiff to relieve her of duty because of her agitated demeanor and conduct. As a result of this incident, plaintiff was required to undergo a psychiatric evaluation and attend an administrative hearing into her capacity to perform her work as a trooper. Major Gray initiated the hearing.
THE MCAD COMPLAINTS
On December 16, 1997, plaintiff filed a complaint with the Massachusetts Commission Against Discrimination (“the MCAD”) alleging that the State Police subjected her to sex discrimination, specifically sexual harassment and disparate treatment. In that complaint, plaintiff claimed she was harassed by Trooper Vann through physical intimidation and embarrassment arising from his placement of the pink triangle in her mailbox. Plaintiff also alleged that Lt. Fogarty and Sgt. Mason subjected her to sexist and condescending language and failed to take appropriate actions based on her complaints of harassment to them. Plaintiff contended that Lt. Fogarty subjected her to disparate treatment by scrutinizing her daily journal entries and collaborating with others in filing a criminal complaint against her for allegedly striking Cabozzi. Plaintiff also claimed disparate treatment due to denial of her request for a hardship transfer.
In November 24, 1998, plaintiff filed a second complaint with the MCAD, alleging that the State Police violated G.L.c. 151B by subjecting her to sexual discrimination. The basis of this complaint was the conduct described above engaged in by Trooper Ashe while plaintiff was stationed at H Troop from November of 1997 to June of 1998.
DISCUSSION
Summary judgment shall be granted where there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Defendants seek summary judgment on all counts of the amended complaint. Defendant Gray contends that plaintiff is estopped from bringing a sex discrimination claim against him in this court because plaintiff failed to name him as a party in either MCAD complaint. All defendants argue that summary judgment is warranted on plaintiffs sex discrimination claim because (i) the plaintiff failed to file her first MCAD complaint within the applicable six-month statute of limitations and the evidence does not support a continuing violation claim; (ii) the conduct which is the subject of the second MCAD complaint is not severe or pervasive sexual conduct; and (iii) plaintiff cannot show by admissible evidence that defendants treated her differently based on her gender. As to the intentional interference with advantageous relations claim (Count II) and the intentional infliction of emotional distress claim (Count III), defendants Fogarfy and Gray argue that they are entitled to judgment as a matter of law.
I. The Sex Discrimination Claim (Count I)
In her G.L.C. 15 IB claim, plaintiff offers evidence that the defendants subjected her to disparate treatment based on her gender, sexually harassed her and retaliated against her when she complained of discrimination.[3] As noted, defendants make several points about this evidence.
A. Failure to Name Defendant Gray in the MCAD Complaints
Defendant Gray argues plaintiff is estopped from bringing a claim against him in this court under G.L.c. 151B because plaintiff did not name him as a party in either MCAD complaint. In her summary judgment pleadings, plaintiff provides some evidence of two separate instances of sex discrimination involving Major Gray: (i) his involvement from January to November of 1997 in the filing of a criminal complaint against her and (ii) his alleged retaliatory disparate treatment of plaintiff in the fall of 1999 after he became plaintiffs supervisor.
As to the 1997 conduct, plaintiff concedes that Major Gray was not identified by name in the MCAD *273 complaints, but she argues that he was sufficiently-identified in the first MCAD complaint to permit a claim against him here. In the first MCAD complaint, plaintiff alleges in paragraph 13:
On or about 11-6-97, I was subjected to disparate discipline when Lt. Fogarty pursued and collaborated with others regarding filing a misdemeanor complaint against me for striking a civilian who attempted to spit on me. (Emphasis added.)
An MCAD complaint must contain appropriate identification of the persons alleged to have committed unlawful discriminatory acts and a concise statement of those acts. G.L.c. 15133, §5; 804C.M.R. §1.03(4)(a).[4] When a complainant fails to identify a party by name in the MCAD complaint and seeks to bring a claim against the individual in this court, the complainant may proceed against the party if the MCAD complaint puts the party’s conduct at issue and provides the party with notice of and an opportunity to conciliate the charge during the MCAD proceedings. Chapin v. Univ. of Massachusetts, Lowell, 977 F.Sup. 72, 76 (D.Mass. 1997) (plaintiffs reference in the MCAD complaint to “(m]anagement or other officials overseeing the Police Department” sufficient to allow plaintiff to proceed against otherwise unnamed defendant meeting that description); Chatman v. Gentle Dental Ctr., 973 F.Sup. 228, 235 (D.Mass. 1997) (defendant’s conduct considered to have been put in issue by MCAD complaint although not named within it). Applying this standard, I find and rule that the 1997 conduct described in the first MCAD complaint sufficiently identifies Major Gray to allow plaintiff to proceed against him in this court because of the limited number of individuals involved in the filing of the criminal complaint and Major Gray’s role in that matter.
Plaintiff also alleges a retaliation claim against Major Gray for his conduct as her supervisor at H Troop beginning in August of 1999. Plaintiff contends that her retaliation claim against Major Gray is based upon the filing of the MCAD charge. Obviously, then, this conduct was not the subject of either MCAD complaint. The majority of federal courts that have addressed the subject have determined that a retaliation claim arising out of an administrative complaint does not have to be the subject of a separate administrative claim for the plaintiff to bring the retaliation claim into court.[5] Although no Massachusetts appellate decision specifically adopts this proposition, the Appeals Court has suggested that it would follow federal authority on this issue. Carter v. Commissioner of Correction, 43 Mass.App.Ct. 212, 218 (1997). In light of the federal authority and the fact that G.L.c. 151B is to be “construed liberally for the accomplishment of the purposes thereof,” I conclude that the retaliation claim against Major Gray may proceed to trial.
B. Separation of the Sexual Harassment and Disparate Treatment Claims
The State Police seek to separate plaintiffs disparate treatment claim from her sexual harassment claim, arguing that the statute of limitations will then preclude the sexual harassment claim. Claims of sexual harassment and disparate treatment are subsets of the broad sex discrimination category made unlawful in §4(1).[6] See e.g., Cuddyer v. The Stop & Shop Supermarket Co., 434 Mass. 521, 522 (2001) (allowing sexual harassment claim under both 151B, §4(1) and (16A)); Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. 673, 674 (1993) (sexual harassment part of sex discrimination claim); College-Town, Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 162 (1987) (“sexual harassment may constitute discrimination in violation of G.L.c. 151B, §4(1)”). G.L.c. 151B itself, after defining sexual harassment, states: “Discrimination on the basis of sex shall include, but not be limited to, sexual harassment.” G.L.c. 151B, §1(18).
Because plaintiffs allegations of disparate treatment, as well as her allegations of sexual harassment, are included under the general category of sex discrimination as defined in G.L.c. 151B, I decline to separate the two claims for purposes of the six-month statute of limitations. My conclusion is buttressed by O’Rourke v. City of Providence, 235 F.3d 713, 729-30 (1st Cir. 2001), where the Court of Appeals stated:
Where a plaintiff endures harassing conduct, although not explicitly sexual in nature, which undermines her ability to succeed at her job, those acts should be considered along with overtly sexual conduct in assessing a hostile work environment claim . . . Courts should avoid disaggregating a hostile work environment claim dividing conduct into instances of sexually oriented conduct and instances of unequal treatment, then discounting the latter category of conduct. (Emphasis added.)
C. The Six-Month Statute of Limitations
The conduct which constitutes plaintiffs 151B claim is set forth in two MCAD complaints: one made on December 16, 1997, and the second on November 24, 1998. Defendants argue that the conduct alleged in the first complaint is barred by the statute of limitations, which requires that a sex discrimination complaint be filed with the MCAD within six months of the occurrence of the discriminatory act or events. G.L.c. 151B, §5. In response, plaintiff contends that the conduct complained of in the first complaint is part of a continuing violation which includes conduct occurring within the six months before the filing of that complaint.
When plaintiff filed her first complaint with the MCAD, a complainant had to file a complaint with the MCAD within six months of occurrence of the alleged discriminatory conduct unless the unlawful conduct complained of was of a continuing nature. G.L.c. *274 151B, §5; 804 C.M.R. §1.03(2) (1993); Cuddyer, 434 Mass, at 531. “(I]f the alleged events are part of an ongoing pattern of discrimination, and there is a discrete violation within the six-month limitations period to anchor the earlier claims,” a plaintiff is permitted to bring a 151B claim for otherwise time-barred events. Cuddyer, 434 Mass, at 532.
In her summary judgment submission, plaintiff offers evidence of at least two instances of possible sex discrimination occurring within six months of the filing of her first MCAD complaint: (i) the October 1997 denial of plaintiffs request for a hardship transfer and (ii) the November 1997 criminal complaint against plaintiff. Evidence of these events occurring within six months of the filing of the first MCAD complaint permits plaintiff to proceed beyond summary judgment on a continuing violation theory.
D. Sufficiency of the Evidence
Defendants argue that plaintiffs evidence of a G.L.c. 151B violation is insufficient as a matter of law, thereby entitling them to summary judgment. However, there are numerous disputed issues of fact on plaintiffs sexual harassment claim, including but not limited to the severity and pervasiveness of verbal harassment, physical intimidation, and placement of sexually degrading materials, the purpose behind defendants’ treatment of plaintiff and the effect of defendants’ conduct on plaintiff. There are also disputed issues of material fact as to plaintiffs disparate treatment claim, including but not limited to the adequacy of plaintiffs performance as a state trooper, the purpose of denial of plaintiffs request for a hardship transfer, defendants’ intent in instituting criminal charges against plaintiff and the reason for the close scrutiny of plaintiffs work in comparison to similarly-situated male troopers. As to the retaliation claim, plaintiff offers some evidence of ostracism, unusual disciplinary scrutiny and other disparate treatment by defendants. This claim also raises disputed factual issues to be decided by a jury. Therefore, summary judgment on the entire sex discrimination claim (Count I) is DENIED.
II. The Intentional Interference with Advantageous Relations Claim (Count II)
To sustain a claim of intentional interference with advantageous relations, plaintiff must show that the defendants knowingly and for an improper purpose or by improper means induced a party to breach a contract or not to enter into or continue a business relationship, resulting in damage. Buster v. Moore, 438 Mass. 635, 652 (2003).
Defendants Fogarty and Gray claim that plaintiff has not alleged sufficient facts showing that they used the improper motive of sex discrimination to interfere with her relationship to the State Police, or that they interfered with plaintiffs relationship with the State Police. In opposition, plaintiff states the following.
White’s relationship with [the State Police] has been damaged. While on restrictive duty for nearly a year, she was unable to perform crucial functions of police work or earn overtime. Likewise, by damaging her reputation, the individual defendants have permanently and adversely affect her relationship.
Pl.’s Opp. Mem. 15.
There are contested issues of fact as to the propriety of defendants’ motive behind their conduct and as to the harm that plaintiff suffered as a result. Therefore, summary judgment on Count II is DENIED.
III. The Intentional Infliction of Emotional Distress Claim (Count III)
In order to sustain a claim for intentional infliction of emotional distress, a plaintiff must prove that defendants intended to inflict emotional distress or knew or should have known that such distress was the likely result of their conduct, that the defendants’ conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable in a civilized community, that the actions of the defendants caused plaintiffs distress, and that the emotional distress suffered by plaintiff was severe and of such a nature that no reasonable person could be expected to endure it. Agis v. Howard Johnson Co., 371 Mass. 140,144-45 (1976).
Here, sharply disputed issues of fact exist as to defendants’ intent in their treatment of plaintiff, as to the gravity of defendants’ conduct and as to the severity and nature of plaintiffs emotional distress. Therefore, summary judgment on Count III is DENIED.
ORDER
For the foregoing reasons, the motions for summary judgment are DENIED.

 The amended complaint also contains a 42 U.S.C. §1983 count, which plaintiff dismissed.

 The first names of certain individuals in this memorandum are not in the summary judgment record.

 G.L.c. 151B, §4(1) provides in pertinent part: “It shall be an unlawful practice: . . . For an employer, by himself or his agent, because of the . . . sex ... of any individual ... to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.”
G.L.c. 151B, §4(16A) provides: “It shall be an unlawful practice:... For an employer, personally or though its agents, to sexually harass any employee.”
G.L.c. 151B, §4(4) provides in pertinent part: “It shall be an unlawful practice:... For any... employer... to discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.”
G.L.c. 151B, §4(4A) provides: “It shall be an unlawful practice: . . . For any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten, or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter.”
*275 In plaintiffs amended complaint, she alleges that defendants Fogarty and Gray not only “participated in” discriminatory conduct, but also “aided, abetted, coerced and incited” discriminatory conduct by other troopers. This language mirrors that in G.L.c. 151B, §4(5). However, in plaintiffs opposition to the motion for summary judgment of the State Police, plaintiff lists the sections of the statute she claims were violated by defendants but does not include §4(5). Plaintiff also does not offer an analysis of her claims under §4(5) in her summary judgment papers. Therefore, I assume plaintiff is not proceeding under §4(5).

 804 C.M.R. §1.03(4) provides in pertinent part:
(4) Content. The complaint shall contain:
(a) appropriate identification of the Complainant(s) and the person(s) alleged to have committed unlawful discriminatory acts (hereinafter referred to as the Respondent(s));
(b) the date(s) on which such unlawful discriminatory acts occurred; or where such acts are of a continuing nature, the period of time during which acts occurred;
(c) a concise statement of the alleged discriminatory acts

 See e.g. Brown v. Hartshome Pub. Sch. Dist No. 1, 864 F.2d 680, 682 (10th Cir. 1988) (plaintiff not required to file second administrative complaint for retaliation before bringing court action); Gupta v. East Texas State Univ., 654 F.2d 411, 414 (5th Cir. 1981) (unnecessary for a plaintiff to exhaust administrative remedies before making a retaliation claim growing out of earlier charge).

 Sexual harassment is also made unlawful under §4(16A). The fact that sexual harassment is made unlawful under two sections of the statute, §4(1) and (16A), is explained by the fact that the statute did not originally contain §4(16A), which was added in December 9, 1986. At that time, whether or not §4( 1) prohibited sexual harassment was a question before the Supreme Judicial Court in College-Town. Div. oflnterco, Inc. v. MCAD, 400 Mass. 156, 162 (1987). After the legislature added §4(16A), specifically making sexual harassment unlawful, the Supreme Judicial Court issued its decision in College-Town, ruling that sexual harassment was also unlawful under §4(1).